[No. G002020. Fourth Dist., Div. Three. Mar. 26, 1986.]

LINDA MARIE ZAMBRANO et al., Plaintiffs and Appellants, v.
MILFORD E. DOROUGH, Defendant and Respondent.

COUNSEL

Jose E. Tafolla for Plaintiffs and Appellants.

Beam, DiCaro, D'Antony, Stafford & Brobeck and John R. DiCaro for Defendant and Respondent.

OPINION

WALLIN, J.—Linda Marie Zambrano and Arthur D. Zambrano appeal the judgment of dismissal of their complaint against Milford E. Dorough, M.D., for medical malpractice. After a bifurcated trial on the issue of the statute of limitations, the court found the complaint was filed more than one year after Zambrano had knowledge of her injury and was thus barred by Code of Civil Procedure section 340.5.

On December 31, 1976, Linda Zambrano, then 20 years old, had a copper seven I.U.D. removed in the emergency room of Westminster Hospital after experiencing severe abdominal pain and vaginal bleeding. She first saw Dorough on January 5, 1977 after a recurrence of her symptoms. He diagnosed her as having miscarried an undetected pregnancy and admitted her into Hoag Hospital where he performed a dilation and curettage on her the next day. She was discharged in satisfactory condition on January 8, and was seen by Dorough for a followup visit on January 14. At that visit, Zambrano complained of pain and of passing large blood clots, but Dorough described her condition as "un-noteworthy."

On January 26, Zambrano went to Dorough's office complaining of severe, sharp rectal pain and acute lower abdominal pain. Because Zambrano was not covered by insurance, Dorough transferred her to the University of California at Irvine Medical Center (UCI) by ambulance. Surgery was performed and a ruptured tubal pregnancy was discovered and treated. She was discharged 12 days later.

While awaiting care, Zambrano overheard a UCI doctor on the phone with Dorough arguing about her referral and the absence of her chart. During her stay there, Dorough talked to Zambrano's mother and said he had misdiagnosed her original condition; he told Zambrano's husband they did not have to pay the bill for services he rendered to her. Shortly after her discharge from UCI, Zambrano's mother told her a doctor at UCI had said "something was wrong" and "something should be done about it." Her mother advised Zambrano to "have a talk with Dr. Dorough." Another doctor at UCI told Zambrano that Dorough had "done something wrong."

The record is unclear as to the subsequent chronology of events.[1] Somewhere between January 1977 and May 1979, Zambrano became pregnant and had a daughter. During this period of time, she had additional operations involving her reproductive system. In May 1979, Dr. Terrel Bond told Zambrano a complete hysterectomy was necessary. At that time they discussed the previous ruptured ectopic pregnancy, and he indicated there was a possible connection between it and the condition requiring the hysterectomy. Zambrano testified that conversation was the first time she was aware of the connection between her physical problems and the treatment by Dorough. She and her husband, Arthur, filed a complaint on August 17, 1979, against Dorough, Hoag Hospital and Sentry Insurance Company for negli-

---

[1]Zambrano asserts on her notice of appeal certain declarations of Linda and Arthur Zambrano previously attached to opposition to a motion for summary judgment were resubmitted at trial. However, we can find no indication in the clerk's or reporter's transcript that this was actually done; furthermore, the declarations were not included in the record on appeal. Thus, we do not consider their contents.

gence;[2] she also prayed for punitive damages against Dorough, based on her allegations of his wilful, intentional and malicious abandonment of her as a patient and falsification and destruction of her medical records. Arthur filed for loss of consortium.

The action was bifurcated and a trial was held on the issue of the statute of limitations. The court found, "as a matter of fact, that the evidence shows that the plaintiff had knowledge or cause for knowledge of sufficient facts to be put on inquiry regarding the defendant's alleged negligence more than one year prior to the date the complaint was filed" and thus dismissed the case.

We accept, as we must, the court's factual finding that Zambrano knew of Dorough's alleged negligence more than one year prior to filing the complaint.[3] However, nothing at trial contradicted Zambrano's assertion that she filed the complaint within one year of learning of the need for a hysterectomy and of its possible connection to Dorough's treatment of her. Thus, the question we address is whether Zambrano may proceed against Dorough on the theory that his negligent misdiagnosis caused her hysterectomy, even though she filed the action more than one year after she knew she had suffered some relatively minor injuries from that negligence.

The applicable statute of limitations (Code Civ. Proc., § 340.5) provides: "In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. . . ."

Under this statute, injury is not synonymous with wrongful act; rather, injury is a word of art which refers to the damaging effect of the wrongful act and not the act itself. (*Tresemer* v. *Burke* (1978) 86 Cal.App.3d 656, 665 [150 Cal.Rptr. 384, 12 A.L.R.4th 27]; *Bispo* v. *Burton* (1978) 82 Cal.App.3d 824, 830 [147 Cal.Rptr. 442].) The one year period commences when the plaintiff is reasonably aware of the negligent cause as well as the physical manifestation of her injury. (*Hills* v. *Aronsohn* (1984) 152 Cal.App.3d 753, 759 [199 Cal.Rptr. 816].)

Here, the injury Zambrano suffered was the loss of her reproductive ability due to the necessity for a complete hysterectomy. It is not disputed that

---

[2]Sentry Insurance Company has been dismissed with prejudice.

[3]The facts recited above reveal substantial evidence to support the court's finding. (*Skyway Aviation, Inc.* v. *Troyer* (1983) 147 Cal.App.3d 604 [195 Cal.Rptr. 281].)

she discovered this injury and its possible negligent cause in May 1979 when talking with Dr. Bond. The complaint was promptly filed two months thereafter. Thus, there would be no issue regarding the limitations period but for the injuries she suffered at the time Dorough allegedly misdiagnosed her tubal pregnancy. These injuries, although minor compared with the loss of her reproductive capacity, were substantial enough to accrue a cause of action.

The traditional view prohibits splitting a cause of action: "'As a general rule, where an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once. It is not material that all the damages resuling [*sic*] from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date. . . . [Citation.]'" (*Sonbergh* v. *MacQuarrie* (1952) 112 Cal.App.2d 771, 774 [247 P.2d 133].) However, there is a trend away from inflexible enforcement of this rule.

In *Martinez-Ferrer* v. *Richardson-Merrell, Inc.* (1980) 105 Cal.App.3d 316 [164 Cal.Rptr. 591], the plaintiff, a surgeon, took a certain drug to treat his high cholesterol condition in 1960. A few months later, he experienced retinal swelling and severe dermatitis. Plaintiff and his doctors assumed the cause was the medication, and he discontinued its use. His vision and dermatitis gradually improved, but he was unable to work for four to six weeks. Sixteen years later, cataracts were discovered in his eyes that constituted a "permanent condition which created tunnel vision and interfered with [plaintiff's] ability to perform surgery." (*Id.,* at p. 319.) There was evidence that the cataracts were caused by the medication taken in 1960.

The court held the plaintiff had separate causes of action created by the independent injuries of the dermatitis and retinal swelling, on the one hand, and the permanent condition of cataracts, on the other. Thus, he was not barred by the statute of limitations from proceeding on the latter cause of action, although he was barred on the former. "If we are right in our ultimate conclusion that the present suit for damages for the cataracts does not involve an impermissible splitting of a cause of action, it is immaterial whether or not [plaintiff] recovered an earlier judgment for the sequelae other than the cataracts." (*Id.,* at p. 324, fn. 7.) The court concluded "the wind is blowing[] away from a blind adherence to rigid concepts of what constitutes a cause of action and toward a set of rules which will enable plaintiffs to recover for just claims where that is possible without prejudice to defendants or insult to established rules of law . . . . We make no attempt to even summarize where all this may lead. We are, however, convinced

that under the peculiar circumstances of this case it would be a miscarriage of justice not to permit plaintiff to go to trial." (*Id.*, at p. 327.)

■      We are likewise convinced that Zambrano should be permitted to proceed against Dorough for the loss of her reproductive capacity. That injury is of a different type than the emotional distress she allegedly suffered from Dorough's refusal to treat her and the pain and suffering and out of pocket losses allegedly accompanying the negligent misdiagnosis. "The cause of action is based upon the *injury* to the plaintiff . . . . [¶] If the complaint alleges violation of a different primary right, it states a different cause of action." (4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 25, p. 69.) Zambrano's right to be free of the transitory damages of discomfort and distress is separate from and independent of her right to have children, a much more serious complication not apparent at the time of the earlier problems. Thus, based on the record before us, we hold the statute of limitations does not bar her cause of action for the loss of her reproductive capacity.

The judgment is reversed. Zambrano is to recover her costs on appeal.

Trotter, P. J., and Crosby, J., concurred.