[No. H002314. Sixth Dist. Dec. 7, 1987.]

DIANNE DeROSE, Plaintiff and Appellant, v.
CALVIN R. CARSWELL, Defendant and Respondent.

COUNSEL

George F. Camerlengo and Thirkell, Pierpoint & Cretan for Plaintiff and Appellant.

Robert H. Ames and Pioda, Bryan, Ames, Helfrich & Wills for Defendant and Respondent.

OPINION

BRAUER, J.—Appellant sued respondent on account of alleged sexual abuse that had occurred between 20 and 13 years earlier. In her complaint, appellant attempted to state causes of action for assault, battery, and intentional and negligent infliction of emotional distress.

The superior court sustained respondent's demurrer to the original complaint without leave to amend on the ground that it was barred by the statute of limitations. (Code Civ. Proc., § 340, subd. (3).) We affirm.

### I.FACTS

Respondent Carswell is appellant DeRose's step-grandfather. DeRose alleges that Carswell sexually abused her beginning when she was four years old and ending when she was eleven (from 1966 to 1973). According to the allegations, Carswell's acts "were all committed against [DeRose's] will and without her consent," and [DeRose] "felt great fear and acceded to [Carswell's] acts due to her perceptions of his greater size and strength and his ability and intent to carry out his threats of harm." Plaintiff also alleges that she continues to suffer emotional injuries as a result of the sexual abuse. DeRose, however, did not immediately discover the injuries and their cause "due to the nature of the acts of the defendant, and the psychological mechanisms experienced by [DeRose] to deny, repress and dissociate herself from the underlying events, or to seek therapeutic intervention until within the last six months."

The limitations period applicable to DeRose's causes of action for assault and battery, and intentional and negligent infliction of emotional distress, is one year. (Code Civ. Proc., § 340, subd. (3).) The statute of limitations was tolled until March 2, 1980, when DeRose became an adult. (Code Civ. Proc., § 352, subd. (a).) Thus, unless some exception applies, the statute of limitations barred DeRose's claims as of March 2, 1981. DeRose filed her complaint on January 13, 1986, four years and ten months later.

## II. DISCUSSION

DeRose contends that the statute of limitations does not bar her claims for four reasons. First, she argues that she is entitled to invoke the delayed discovery doctrine because she did not appreciate until recently the causal relationship between the alleged assaults and her emotional injuries, even though she was aware of the assaults. Second, she contends that the decision in *Zambrano* v. *Dorough* (1986) 179 Cal.App.3d 169 [224 Cal.Rptr. 323], permits her to state a separate cause of action based solely upon the subsequent emotional harm. Third, she maintains that Carswell is estopped to assert the statute of limitations because of his past wrongful conduct. Fourth, she claims that her inability until recently to understand what caused the emotional injuries constituted "insan[ity]" within the meaning of Code of Civil Procedure section 352, subdivision (a). DeRose also challenges the superior court's decision to sustain Carswell's demurrer without leave to amend.

█ In determining whether the complaint stated a cause of action, we consider the demurrer as admitting all material and issuable facts properly pleaded. (*Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541, 549 [99 Cal.Rptr. 745, 492 P.2d 1137].) We do not consider whether the plaintiff will be able to prove her allegations. "A demurrer tests only the legal sufficiency of the pleading." (*Committee on Children's Television, Inc.* v. *General Foods Corp.* (1983) 35 Cal.3d 197, 213 [197 Cal.Rptr. 783, 673 P.2d 660].)

### A. *Delayed Discovery*

█ DeRose follows a number of plaintiffs who have alleged that psychological defense mechanisms caused by sexual abuse, especially in the context of incest, prevent recognition of the cause and extent of emotional harm. (See *Tyson* v. *Tyson* (1986) 107 Wn.2d 72 [727 P.2d 226]; *Raymond* v. *Ingram* (1987) 47 Wn.App. 781 [737 P.2d 314]; cf. *John R.* v. *Oakland Unified School District* (1987) 194 Cal.App.3d 1454 [240 Cal.Rptr. 319]█) Like DeRose, the plaintiffs in those cases point to repression or analogous psychological phenomena as occasions for application of the delayed discovery rule.

In her brief on appeal, DeRose presents information from psychological and sociological literature about incestuous sexual abuse. DeRose discusses the prevalence of the problem and the psychological and familial pressures against discussing it privately or publicly. These pressures, DeRose ex-

plains, sometimes prevent survivors of incest from understanding their emotional injuries until they receive appropriate therapy.

This case, however, does not require us to determine the validity of any psychological theory or to articulate general rules governing the delayed discovery doctrine's application in sexual abuse cases. We do not address those questions because the allegations of DeRose's complaint affirmatively show that she cannot satisfy the minimum conditions for application of the delayed discovery rule.

The statute of limitations ordinarily begins to run "upon the occurrence of the last fact essential to the cause of action." (*Saliter* v. *Pierce Brothers Mortuaries* (1978) 81 Cal.App.3d 292, 296 [146 Cal.Rptr. 271].) In personal injury cases, the wrongful act often causes inmediate harm. But in some cases where injury was inflicted without perceptible trauma courts have held that the statute does not begin to run until the plaintiff discovered, or in the exercise of reasonable diligence should have discovered, all of the facts which are essential to the cause of action. (*Ibid.*) The doctrine's paradigmatic application is to medical malpractice cases (see, e.g., *Huysman* v. *Kirsch* (1936) 6 Cal.2d 302, 311-313 [57 P.2d 908]), but courts have applied the doctrine in other contexts as well. (See, e.g., *Manguso* v. *Oceanside Unified School Dist.* (1979) 88 Cal.App.3d 725, 731 [152 Cal.Rptr. 27] [libel]; *Cain* v. *State Farm Mut. Auto. Ins. Co.* (1976) 62 Cal.App.3d 310, 314-315 [132 Cal.Rptr. 860] [invasion of privacy]; *G. D. Searle & Co.* v. *Superior Court* (1975) 49 Cal.App.3d 22, 25 [122 Cal.Rptr. 218] [prescription drugs]; *Allred* v. *Bekins Wide World Van Services* (1975) 45 Cal.App.3d 984, 989-991 [120 Cal.Rptr. 312] [negligent breach of contract].)

Whatever the context, the delayed discovery doctrine applies *only* when a plaintiff has not discovered all of the facts essential to the cause of action. Conversely, if the plaintiff has discovered all of the essential facts, the doctrine does not apply. In this case, the allegations of the complaint leave no doubt that DeRose was actually aware long ago of the facts necessary to state a cause of action against Carswell based upon the sexual assaults. In her complaint, DeRose alleged affirmatively that the assaults "were all committed against plaintiff's will and without her consent" and that, "[a]t the times of said sexual molestation, plaintiff felt great fear and acceded to defendant's acts due to her perceptions of his greater size and strength and his ability and intent to carry out his threats of harm." The immediate harm caused by the alleged assaults gave DeRose a right to sue at that time. (*Sonbergh* v. *MacQuarrie* (1952) 112 Cal.App.2d 771, 773-774 [247 P.2d 133].)

DeRose argues that her cause of action did not accrue until she experienced later emotional harm and recognized its connection with the earlier

assaults. There are, indeed, times when awareness of a wrongful act does not carry with it awareness of harm. That is true, for example, when an incorrect pharmaceutical prescription cannot be appreciated as tortious until it has caused harm. (See, e.g., *G. D. Searle & Co.* v. *Superior Court, supra,* 49 Cal.App.3d 22.) An assault, however, which by definition is perceived as unconsented to and offensive, causes harm as a matter of law. (*Sonbergh* v. *MacQuarrie, supra,* 112 Cal.App.2d at pp. 773-774.) **(2b)** For us to hold that no cause of action accrued until 13 years after the assault would suggest, incorrectly, that a victim of sexual assault cannot sue unless and until there are delayed consequences.

If DeRose could and did allege that she repressed her memories of the sexual assaults until one year before filing her complaint, she might be able to invoke the delayed discovery rule.[1] While the assaults that DeRose has alleged caused serious harm as a matter of law, DeRose could not logically be charged with awareness of the harm if she had not been aware of the assaults. In fact, there are allegations in the complaint that might be read to suggest that this was the case. DeRose, however, both in the superior court and on appeal, disclaimed that interpretation of the complaint. While we must construe the complaint to state a cause of action, if possible, there is no rule that compels us to interpret the complaint to allege particular facts which the pleader disavows.

 In the relevant portions of her complaint, DeRose alleges that Carswell's acts caused her to develop "psychological mechanisms" and "psychological illnesses" which "prevented her from knowing, recognizing and understanding the nature or extent of her injuries . . . and the causal relationship between her present injuries and defendant's past acts." Elsewhere in her complaint, DeRose alleges that she failed to discover "the fact of her injuries and their cause."

At the hearing on the demurrer, the superior court specifically discussed with DeRose's counsel the interpretation and effect of the complaint's delayed discovery allegations. Counsel's remarks made it clear that DeRose does not interpret her own complaint to allege that she had repressed her memories of the sexual assaults. "[COUNSEL]: And the medical literature we cited in the brief I think attests to the fact that there are times, frankly, and it's in the literature, where they're[2] not even aware of the initial

---

[1] Apparently, this situation has not arisen in California. In Washington, where it has arisen, that state's Supreme Court held that a plaintiff still could not state a cause of action. (*Tyson* v. *Tyson* (1986) 107 Wn.2d 72 [727 P.2d 226], discussed *infra,* at p. 1021.) In light of the limited allegations in DeRose's complaint, however, we have no occasion to decide the specific question whether a plaintiff who alleges that he or she has recently remembered earlier sexual abuse is entitled to invoke the delayed discovery doctrine.

[2] That is, victims of incestuous sexual abuse.

wrongful act after years of therapy. [¶] I recall—THE COURT: That's not an issue here. [COUNSEL]: Not as alleged. Not as alleged."

Counsel's response, "[n]ot as alleged," naturally raised the question whether DeRose could make such allegations if afforded leave to amend. The court also asked this question, and counsel's response demonstrated that DeRose would not be able to make the necessary allegations. "THE COURT: She was aware of the fact she was injured? [COUNSEL]: Correct. [¶] Well, she was aware she was molested. And she was aware of the wrongful act. [¶] It's a tort, and we are talking four elements here. We are talking wrongful—THE COURT: She was aware of the wrongful act. She was aware of the incidents that took place. [COUNSEL]: True." Counsel went on to explain the very different theory underlying this action: "But the key thing is the other element of the tort, namely proximate causation, we are saying that it was not until the plaintiff began receiving psychological therapy that she began to make the connection and was able to make the connection between her present injuries and the earlier misconduct."

On appeal, DeRose's position has not changed. She does not suggest that she repressed the memories of the sexual assaults. ■ ■ ■ ■ ■ Instead, she argues that, "although appellant here was aware of the repeated sexual molestation that occurred, it is alleged that she was unaware of the later serious and ongoing injuries that have plagued her in her adult life until of [sic] one year of the filing of the complaint."[3]

As a matter of law, for the reasons discussed above, DeRose's allegations do not justify application of the delayed discovery doctrine. Because she has disclaimed the ability to make the allegations that might justify the doctrine's application, the court properly sustained the demurrer.

The First Appellate District's recent decision in *John R.* v. *Oakland Unified School District, supra,* 194 Cal.App.3d 1454,■ does not affect our disposition of this case. In *John R.,* the court held that "where a *parent's* delayed discovery of a sexual assault *on a minor* is due to the continuing effect of the assault, the cause of action for the assault does not accrue until the effect of the underlying tort is no longer operative." (*Id.* at p. 1457, italics added.) The court based its holding on the express assumption "that the parent's discovery is the relevant factor for purposes of the

---

[3] "[W]hile briefs and argument are outside the record, they are reliable indications of a party's position on the facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal § 251 at p. 258.) Thus, the Supreme Court has relied upon statements at oral argument to show that the only proper ground for an action does not exist. (*Browne* v. *Superior Court* (1940) 16 Cal.2d 593, 599 [107 P.2d 1, 131 A.L.R. 276].)

[governmental] claims statutes" involved in that case. (*Id.* at p. 1463.) We do not have occasion to accept or to reject the First District's views on the questions involved when the timeliness of an action for sexual assault depends upon the knowledge of someone other than the plaintiff. In the case at bar, it was DeRose's own knowledge that mattered.

While we have no reason to doubt that DeRose might have stated valid causes of action were it not for the statute of limitations, we are bound by the statute as by other legislative acts. On this point, the Legislature has recently increased to three years the limitations period applicable to civil actions for injury based upon specified types of sexual abuse, including incest. (Code Civ. Proc., § 340.1, added by Stats. 1986, ch. 914, § 1.) The new statute (Code Civ. Proc., § 340.1), however, does not make this action timely. Even under a three-year limitations period, this action would have been commenced almost two years too late.

 DeRose points to Code of Civil Procedure section 340.1, subdivision (d), part of the new statute, as a legislative determination that courts may apply the delayed discovery doctrine in sexual abuse cases. DeRose is correct, although that point does not aid her. In subdivision (d), the Legislature provided that "[n]othing in this bill is intended to preclude the courts from applying delayed discovery exceptions to the accrual of a cause of action for sexual molestation of a minor." Contrary to DeRose's suggestion, however, this language does not mandate application of the delayed discovery doctrine in any particular case. Instead, the Legislature apparently wanted to avoid the implication that the new, three-year limitation period represented a legislative rejection of the delayed discovery doctrine. The new statute did not change in any way the prerequisites for applying the discovery rule.

 Because California's delayed discovery rule does not apply to DeRose's action, citation of cases from other jurisdictions is unnecessary. However, the only similar cases we have identified support our conclusion.

A Washington Court of Appeals recently declined to apply that state's delayed discovery doctrine under circumstances functionally identical to those presented here. The plaintiff in that case, like DeRose, alleged that she was sexually abused as a child by her grandfather. Also like DeRose, the plaintiff was aware of the sexual abuse but was not aware of the causal connection between the abuse and subsequent emotional harm until she began therapy. (*Raymond* v. *Ingram, supra,* 737 P.2d 314 at pp. 316-317.) The court observed that "[i]t does not matter that [the plaintiff] had not discovered the causal connection to all her injuries, because when [she] reached the age of majority she knew that she had substantial damages associated with the sexual abuse." (*Id.* at p. 317.)

The Washington Supreme Court has gone even further and declined to apply the delayed discovery doctrine to a plaintiff who alleged that she was not aware of either the sexual abuse or her injuries until many years later. The court held that "[t]he discovery rule should be adopted only when the risk of stale claims is outweighed by the unfairness of precluding justified causes of action." (*Tyson* v. *Tyson, supra,* 727 P.2d 226 at p. 228.) To balance those competing considerations, the court further held that application of the delayed discovery doctrine is justifiable only where "the objective nature of the evidence makes it substantially certain that the facts can be fairly determined even though considerable time has passed since the alleged events occurred. Such circumstances simply do not exist where a plaintiff brings an action based solely on an alleged recollection of events which were repressed from her consciousness and there is no means of independently verifying her allegations in whole or in part." (*Id.* at p. 229.)

The case at bar presents similarly critical evidentiary problems. Indeed, DeRose's counsel has stated that there "are no witnesses." Unlike the court in *Tyson,* however, we have no occasion to reinterpret the delayed discovery rule. Since DeRose was aware of the alleged sexual assaults, and since she suffered cognizable harm at the time (*Sonbergh* v. *MacQuarrie, supra,* 112 Cal.App.2d at pp. 773-774), California's delayed discovery rule does not apply. (*Saliter* v. *Pierce Brothers Mortuary, supra,* 81 Cal.App.3d at pp. 297-298.)

### B. *Zambrano* v. *Dorough*

DeRose contends that, even if the statute of limitations bars an action based upon the harm immediately caused by the assaults, she nevertheless can state a separate cause of action based upon the subsequent emotional harm. Normally, this would amount to splitting a cause of action. In arguing to the contrary, DeRose relies on *Zambrano* v. *Dorough, supra,* 179 Cal.App.3d 169. The *Zambrano* decision represents the most extreme extension of the rule that nominal damages alone will not cause the limitations period to begin to run. (*Davies* v. *Krasna* (1975) 14 Cal.3d 502 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807].) For two reasons, *Zambrano* does not persuade us that DeRose can avoid the statute of limitations. The first reason is that DeRose immediately suffered substantial harm as a result of the alleged sexual assaults. The second reason is that *Zambrano* is not consistent with controlling precedent.

Before discussing the *Zambrano* decision, it is necessary to identify the legitimate scope of the rule which DeRose asks us to apply. There are times when a tort initially causes injuries so insubstantial that it is not reasonable to expect the victim to file a lawsuit, even though she would be entitled to at

least nominal damages. When such a person does not sue, and later suffers substantial injuries that do justify a lawsuit, the statute of limitations may already have run. This is because the limitations period begins to run, under the traditional view, as soon as the plaintiff is aware of any harm, however slight. (*Sonbergh* v. *MacQuarrie, supra,* 112 Cal.App.2d 771, 772.)

More recently, courts have modified the traditional rule in order to avoid punishing the plaintiff, who, having acted reasonably in not prosecuting a lawsuit for insignificant damages, later suffers more substantial harm. The Supreme Court in *Davies* v. *Krasna, supra,* observed that "we have drifted away from the view held by some that a limitations period necessarily begins when an act or omission of defendant constitutes a legal wrong as a matter of substantive law. . . . Rather we generally now subscribe to the view that the period cannot run before plaintiff possesses a true cause of action, by which we mean that events have developed to a point where plaintiff is entitled to a legal remedy, not merely a symbolic judgment such as an award of nominal damages." (14 Cal.3d at p. 513.) The Court also formulated a rule of general application, by which we are bound: "although a right to recover nominal damages will not trigger the running of the period of limitation, the infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory period." (*Id.* at p. 514.)

The rule in *Davies* does not make DeRose's complaint timely. If she had sued in 1980 based upon the incidents of sexual abuse alleged in her complaint, she would certainly have been entitled to more than a "symbolic judgment . . . of nominal damages." (*Id.* at p. 513.) Indeed, the sexual assaults that DeRose alleges are so serious that the Legislature has defined them as felonies.[4] DeRose specifically alleges that, "[d]uring plaintiff's childhood, when she was approximately four years old and until she was 11 years old (1966-1973), defendant did knowingly and intentionally assault, batter, and sexually molest plaintiff on and about her body and person by acts, including, but not limited to, sexually fondling her breasts and genitals, and sexual intercourse. Defendant also used physical force, threats of force, coercion and duress to make plaintiff comply with his physical batteries and molestation, and to force plaintiff to fondle his genitals. [¶] Said acts of defendant were all committed against plaintiff's will and without her consent. [¶] At the times of said sexual molestation, plaintiff felt great fear and acceded to defendant's acts due to her perceptions of his greater size and strength and his ability and intent to carry out his threats of harm."

There is no principled basis on which we can say that the immediate harm caused by these wrongful acts—horrible, if true as alleged—was

---

[4]See, e.g., Penal Code sections 261 (rape), 288 (lewd or lascivious acts with child under age 14).

nominal, or even slight. Thus, DeRose properly does not rely on *Davies,* since that decision cannot make her claims timely.

Instead of relying on *Davies,* DeRose invokes *Zambrano v. Dorough, supra,* which ventured a far-reaching and, we believe, unjustified extension of the rule in *Davies.* The court in *Zambrano* allowed a plaintiff to bring an action for medical malpractice against a physician more than one year after discovering the physician's negligence. Although the plaintiff knew within one year that she had suffered injuries that the court characterized as "relatively minor" (*Zambrano, supra,* 179 Cal.App.3d at p. 172), the plaintiff later suffered additional injuries. Under those circumstances, the court held that the rule against splitting a cause of action did not prevent a suit based upon the later injuries.

The problem with the *Zambrano* opinion is that the facts of the case did not justify application of the *Davies* rule. The *Zambrano* plaintiff's earlier injuries, as to which the statute of limitations had already run, were quite serious. This is clear from the opinion, which describes the earlier harm as an incorrect determination that the plaintiff had miscarried an undetected pregnancy, an unnecessary dilation and curettage, acute pain, passing of large blood clots, a failure to diagnose an ectopic pregnancy, a ruptured fallopian tube, and surgery to treat the ruptured fallopian tube. Nevertheless, the *Zambrano* court characterized this earlier harm as "relatively minor" and as the "transitory damages of discomfort and distress." (*Zambrano, supra,* 179 Cal.App.3d at pp. 172, 174.)

The same act of malpractice eventually caused additional harm to the *Zambrano* plaintiff's reproductive system, including the need for a complete hysterectomy with a resulting loss of fertility. While the subsequent harm was certainly severe, that did not make the earlier harm "nominal" or even "relatively minor." Thus, under *Davies,* the "appreciable and actual harm" that the plaintiff suffered at or before the time of the initial surgery would have "commence[d] the statutory period." (*Davies, supra,* 14 Cal.3d at p. 514.) But the *Zambrano* court did not even cite, much less attempt to reconcile its holding with, *Davies.*

Apparently unwilling to rely solely upon the difference in degree between the earlier and later injuries, the *Zambrano* court also held that the earlier injury to plaintiff's reproductive system and the subsequent loss of fertility constituted invasions of different primary rights. (*Zambrano, supra,* 179 Cal.App.3d at p. 174.) ■ ■ ■ ■ But if the *Zambrano* court's

conclusion as to primary rights is correct,[5] then the court's questionable effort to distinguish slight harm from severe harm was completely unnecessary. ██ ██ That is because the rule against splitting causes of action self-evidently does not apply when the two claims in question involve invasions of different primary rights and, thus, different causes of action.[6] (*Sawyer* v. *First City Financial Corp.* (1981) 124 Cal.App.3d 390, 399 [177 Cal.Rptr. 398].)

██ Ignoring *Davies,* the court in *Zambrano* instead relied upon *Martinez-Ferrer* v. *Richardson-Merrell, Inc.* (1980) 105 Cal.App.3d 316 [164 Cal.Rptr. 591]. It appears that the court in *Martinez-Ferrer* paved the way for *Zambrano* by reading *Davies* too restrictively. Faced with a sympathetic case but believing that *Davies* did not apply, the *Martinez-Ferrer* court simply disregarded the rule against splitting a cause of action. *Zambrano* followed, citing *Martinez-Ferrer* as evidence that "there is a trend away from inflexible enforcement of this rule." (*Zambrano* v. *Dorough, supra,* 179 Cal.App.3d at p. 173.)

*Martinez-Ferrer* involved a plaintiff who developed cataracts 12 years after using an anticholesterol drug. The drug initially caused a rash that lasted six weeks. The court believed that *Davies* did not apply because the court viewed the earlier harm as more than nominal.[7] Instead of applying

---

[5] Although the point is not necessary to our disposition of the case at bar, the *Zambrano* court's alternative holding about primary rights is, in our view, equally incorrect. The court held, without discussing authority to the contrary, that the defendant physician's negligent misdiagnosis had invaded two primary rights and thus created two causes of action. The longstanding rule in California, however, is that "[a] single tort can be the foundation for but one claim for damages." (*Panos* v. *Great Western Packing Co.* (1943) 21 Cal.2d 636, 638 [134 P.2d 242]; see also *Landeros* v. *Flood* (1976) 17 Cal.3d 399, 413 [131 Cal.Rptr. 69, 551 P.2d 389, 97 A.L.R.3d 324]; *Slater* v. *Blackwood* (1975) 15 Cal.3d 791, 795 [126 Cal.Rptr. 225, 543 P.2d 593] )

[6] DeRose does not expressly argue that her cause of action for infliction of emotional distress alleges an invasion of a separate primary right. That contention would not make her complaint timely in any event, since DeRose undoubtedly could have stated a cause of action to recover for emotional distress immediately following the sexual assaults even without the additional allegations about subsequent emotional harm. The sexual assault of a minor would easily establish the required element of outrageous conduct, since "outrageous" is defined as "so extreme as to exceed all bounds of that usually tolerated in a civilized community." (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 209 [185 Cal.Rptr. 252, 649 P.2d 894].) A sexual assault fits that definition; it need not cause additional, delayed emotional harm to be outrageous.

The attempt to create two separate primary rights corresponding to physical and emotional harm also contradicts the common recognition that a sexual assault injures both person and feelings, as well as the rule that a single tort gives rise only to one cause of action. (Cf. Pen. Code, § 263 [originally enacted in 1872] ("[t]he essential guilt of rape consists in the outrage to the person and feelings of the victim of the rape."); see also fn. 5, *ante.*)

[7] In stating that the earlier harm was more than nominal, the *Martinez-Ferrer* court appears to have missed a critical fact with regard to causation. In addition to the rash, the

*Davies,* the *Martinez-Ferrer* court held for the plaintiff without clearly articulating a justifying rule. In place of a rule, the court simply stated that the "wind [was] blowing . . . away from a blind adherence to rigid concepts of what constitutes a cause of action and toward a set of rules which will enable plaintiffs to recover for just claims where that is possible without prejudice to defendants or insult to established rules of law. . . . We make no attempt to even summarize where all this may lead." (*Martinez-Ferrer, supra,* 105 Cal.App.3d at p. 327.)

The *Martinez-Ferrer* court's assault on the rule against splitting a cause of action was completely unnecessary, because the rule in *Davies* would have permitted the *Martinez-Ferrer* plaintiff to sue for cataracts 12 years after experiencing a short-lived rash. We do not believe that the court in *Davies* can reasonably be interpreted as having used the term "nominal" in the restrictive sense of "one dollar." Thus, in its result, *Martinez-Ferrer* is consistent with *Davies*; *Zambrano* is not. *Zambrano* subsumed "significant" harm under the "nominal" harm heading and then contradistinguished that injury from "substantial" harm, thereby vastly expanding the rule which excuses compliance with the statute of limitations. If the facts of *Zambrano* justified application of such a rule, *Zambrano* would virtually obliterate that statute.[8]

Because the *Zambrano* decision conflicts with *Davies, Zambrano* does not represent a legitimate extension of the rule that nominal harm does not trigger the statute of limitations. Under *Davies,* "the infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory period." (14 Cal.3d at p. 514.) Because, in the case at bar, DeRose

plaintiff also suffered vision problems (macula edema) immediately after using the drug. These problems caused the plaintiff to lose six weeks' earnings, which, in the court's view, constituted "substantial damages" precluding the application of *Davies*. (See *Martinez-Ferrer* (1980) 105 Cal.App.3d at p. 325.) The defendant drug manufacturer, in moving for summary judgment on the ground of the statute of limitations, argued that the macula edema should have put the plaintiff on notice that he had substantial damages. (*Id.* at p. 321.) But, the defendant did not admit that the drug caused the macula edema (*id.* at p. 322 fn. 5), and there was no evidence to support causation. The court acknowledged the lack of evidence in its opinion. (*Id.* at pp. 320-321.)

Since there was no proof that the defendants' drug caused the macula edema, one cannot escape the conclusion that the court could have relied upon *Davies*. There is no indication in the opinion that the rash known to have been caused by the drug would on its own have justified the economic burden of a lawsuit.

[8] Significantly, no reported case has relied upon *Zambrano*. Commentators' use of the decision, however, suggests its potential for undoing the statute of limitations, at least in the medical malpractice area. The authors of one treatise flatly state, citing only *Zambrano* as authority, that "if plaintiff suffers more than one 'damaging effect' from the same act, the statute runs separately as to each." (Flahavan, et al., Cal. Practice Guide: Personal Injury (1987) § 5:163.2, at p. 5-51 [interpreting Code Civ. Proc., § 340.5].) This purported statement of the law must come as a shock to many readers.

suffered "appreciable and actual harm" as an immediate result of Carswell's wrongful acts, the statute of limitations bars her claims.

## C. *Estoppel*

■ DeRose argues that Carswell's conduct estops him to assert the statute of limitations. DeRose bases her argument on the following allegation: "[d]uring the time period of the incidents alleged herein, plaintiff was under the dominance of defendant, and subject to coercion, duress, menace, threat, and fear of harm from defendant . . . should she tell or attempt to tell others of said acts . . . ." The time period to which DeRose refers, according to the complaint, ended in 1973, when she was 11 years old. DeRose does not allege that Carswell has engaged in similar conduct in the last 13 years. On that basis, the superior court held that DeRose had not pleaded sufficient facts to raise the issue of estoppel.

While it is true that a defendant whose conduct induces delay in filing suit may be estopped to assert the statute of limitations (see, e.g., *Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524-525 [39 Cal.Rptr. 377, 393 P.2d 689]), the usual context for an estoppel argument is a history of negotiations between the parties that lead one side to believe that claims will be settled. Basing an estoppel on threats appears to be a novel but plausible application of the estoppel rule.[9] The question is whether DeRose comes within the rule she purports to identify.

The fundamental problem with DeRose's estoppel argument is that she did nothing to pursue her claims even after Carswell's conduct ceased. Carswell argues based upon *Lobrovich* v. *Georgison* (1956) 144 Cal.App.2d 567 [301 P.2d 460], that, "[i]f there is still ample time to institute the action within the statutory period after the circumstances inducing delay have ceased to operate, the plaintiff who failed to do so cannot claim an estoppel." (*Id.* at pp. 573-574.) The complaint is not ambiguous about when Carswell's alleged threats ceased. DeRose expressly alleged that that conduct occurred "[du]ring the time period of the incidents alleged," that is, "when she was approximately four years old and until she was 11 years old (1966-1973)." The court in the *Lobrovich* case held that five weeks were sufficient time for the plaintiff to institute an action after the conduct giving rise to an estoppel ceased. In this case, DeRose had a year to file suit as an adult.

---

[9] Carswell argues, relying on *Robbins* v. *Law* (1920) 48 Cal.App. 555 [192 P. 118], that the "[a]lleged wrongdoing alone is not sufficient to estop a defendant." However, the case does not support that proposition. In *Robbins,* the court held only that a plaintiff could not base an estoppel on misrepresentations of law without also sufficiently alleging that a confidential relationship existed. (*Id.* at pp. 560-563.)

One aspect of the *Lobrovich* decision deserves cautious application. When the conduct giving rise to an estoppel ceases shortly before the limitations period expires, application of the *Lobrovich* rule can actually shorten the time available to commence an action. Indeed, this appears to have happened in *Lobrovich,* itself. There is, however, no such unfairness in the case at bar. Because Carswell's alleged conduct ceased while the limitations period was tolled by DeRose's minority, DeRose had the benefit of the full limitations period.

DeRose also makes another estoppel argument. Giving the most generous reading to the complaint, it is possible to link the estoppel allegations with the allegations of psychological repression. In other words, while Carswell's alleged threats ended in 1973, the past threats continued to affect DeRose's ability to appreciate the causal relationship between the assaults and her subsequent emotional injuries. This argument, however, merely repeats the error of the delayed discovery argument. Both arguments fail because DeRose was aware of the assaults and perceived them as offensive; accordingly, DeRose had a right to sue based upon the harm she knew even before she fully understood the cause of any subsequent emotional harm.

### D. *Insanity*

■ DeRose argues that the allegations of her complaint raise an issue of "insan[ity]" under Code of Civil Procedure section 352, subdivision (a). ■ Under that statute, a person who is "insane" is disabled from bringing suit. "Insan[ity]" is defined for these purposes as "a condition of mental derangement which renders the sufferer incapable of caring for [her] property or transacting business, or understanding the nature or effects of [her] acts." (*Hsu* v. *Mt. Zion Hospital* (1968) 259 Cal.App.2d 562, 571 [66 Cal.Rptr. 659].) ■ Thus defined, nothing in DeRose's complaint fairly raises an issue of insanity.

On appeal, DeRose does not suggest that she was "incapable of caring for [her] property or transacting business, or understanding the nature or affects of [her] acts." (*Id.* at p. 571.) Instead, DeRose apparently hopes to demonstrate a kind of insanity based upon the same allegations that underlie her argument for "delayed discovery." Indeed, the complaint contains no other allegations about DeRose's psychological condition. Construing the allegations as favorably as possible to DeRose, the complaint asserts that DeRose's inability to appreciate the connection between the assaults and her subsequent emotional injuries disabled her from bringing suit based upon the subsequent injuries. Construed in this way, however, DeRose's

insanity argument repeats once more the incorrect delayed discovery argument. DeRose's failure to appreciate the causal relationship between the assaults and the subsequent emotional injuries—for whatever reason she failed to appreciate them—is irrelevant. DeRose had a right to sue based upon the alleged assaults, of which she was aware and which she perceived as offensive.

DeRose also makes the novel argument that a person subjected to undue influence is "insane" for the purposes of Code of Civil Procedure section 352. The cases on which DeRose relies, however, do not support her argument. In *Triplett* v. *Williams* (1969) 269 Cal.App.2d 135 [74 Cal.Rptr. 594], the court did not discuss insanity at all; it merely observed that "during whatever time [a potential plaintiff] was of unsound mind, the statute was tolled." (*Id.* at p. 137.) The decision does not remotely suggest that undue influence is equivalent to insanity under Code of Civil Procedure section 352.

DeRose also relies on *Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773 [157 Cal.Rptr. 392, 598 P.2d 45], but misinterprets that case in two respects. First, the Supreme Court in *Wyatt* did not purport to discuss Code of Civil Procedure section 352, the insanity provision. Second, although the court did discuss undue influence, it discussed the subject only to support its holding on a point unrelated to the case at bar. The plaintiff in *Wyatt,* who had borrowed money through a mortgage loan broker, sued the broker and related persons for breach of fiduciary duty and civil conspiracy. The broker had misrepresented the terms of the loan, including the extent of interest, late charges, and balloon payments. The broker continued to assess late charges "up until—and even after—the filing of the complaint." (*Id.* at p. 787.) On these facts, the Supreme Court confirmed previous decisions holding that, "when a civil conspiracy is properly alleged and proved, the statute of limitations does not begin to run on any part of a plaintiff's claims until the 'last overt act' pursuant to the conspiracy has been completed." (*Id.* at p. 786, quoting from *Schessler* v. *Keck* (1954) 125 Cal.App.2d 827, 832-833 [271 P.2d 588].)

It is in the foregoing context that the Supreme Court's remarks about undue influence must be read: "[w]hen, as here, the underlying fraud is a continuing wrong, a convincing rationale exists for delaying the running of the statute of limitations. Just as the statute of limitations does not run against an action based on fraud so long as the fraud remains concealed, so ought the statute to be tolled *even after the fraud is discovered, for so long as the sheer economic duress or undue influence embedded in the fraud con-*

*tinues to hold the victim in place.* " (*Wyatt* v. *Union Mortgage Co., supra,* 24 Cal.3d at p. 788, original italics.)

Disregarding for argument's sake their irrelevance to Code of Civil Procedure section 352's insanity provision, the Supreme Court's remarks in *Wyatt* about undue influence still do not support DeRose's position. *Wyatt* articulated a rule that applies only to civil conspiracies. The Court specifically declined to decide "whether this principle would apply, even if the continuing fraud were pursued by one person acting alone." (*Id.* at p. 788, fn. 5.) Moreover, even if this case were sufficiently like fraud to raise legitimately the question whether *Wyatt* should be extended to cases involving single defendants, to apply *Wyatt* to the case at bar would still be incorrect. Unlike the wrongful acts in *Wyatt,* which continued even as the complaint was being filed, Carswell's alleged threats ended 13 years before DeRose's complaint. In essence, DeRose's undue influence argument merely repeats her estoppel argument.

Because DeRose did not allege that she was insane within the meaning of Code of Civil Procedure section 352, the superior court properly did not interpose the statute as an obstacle to the demurrer.

### E. *Dismissal Without Leave to Amend*

DeRose's right to sue in 1980 based upon the assaults is the fundamental obstacle to her suit in 1986. No argument addressed to her understanding of the causation of subsequent emotional harm, whether phrased as delayed discovery, estoppel, or insanity, can avoid that obstacle.

Although DeRose did not ask the superior court for leave to amend, the court was nevertheless required to consider whether there was a reasonable possibility that amendment could cure the complaint's defects. (*Scott* v. *City of Indian Wells, supra,* 6 Cal.3d at pp. 549-550.) At the hearing on the demurrer, the superior court raised the issue and specifically asked DeRose's counsel appropriate questions to determine whether the opportunity to amend would be useful. In order to avoid the statute of limitations, DeRose would have had to contradict the affirmative allegations of her original complaint to the effect that she was aware of the assaults. As discussed above, the following exchange supported the court's decision to sustain the demurrer without leave to amend. "THE COURT: She was aware of the fact she was injured? [COUNSEL]: Correct. Well, she was aware she was molested. And she was aware of the wrongful act."

 In her brief on appeal, DeRose specifically requests an opportunity to amend and makes the following statement in support: "Appellant believed then and believes now that [she] has alleged sufficient ultimate facts showing a factual basis for the delayed discovery exception to the statute of limitations. Should this court disagree, additional new facts certainly could be alleged which would supplement or flesh out the allegations contained in the original complaint. Such factors could involve the specifics regarding the nature of the misconduct itself, the coercive actions of the respondent, the fear and mechanisms developed by appellant, which rendered her injuries latent and imperceptible, the lack of timely therapeutic intervention, which would have assisted the appellant to recognize her problems, and the long term psychological consequences of the misconduct as subsequently discovered by the appellant through therapy since the filing of the complaint."

Nothing in DeRose's statement addresses her awareness of the original assaults. Additional facts "regarding the nature of the misconduct, itself," will not help to overcome that fundamental obstacle. DeRose's remark about "the coercive actions of the respondent" may be intended to suggest that additional facts exist to support the estoppel argument. However, DeRose affirmatively alleged that the coercive acts ceased 13 years before she filed suit; she has not offered to contradict that allegation. The remainder of DeRose's statement addresses only her failure to recognize the causal connection between the assaults and the subsequent emotional harm. That failure, as explained above, is not relevant.

Although leave to amend should normally be granted, there are cases in which it is not reasonable to expect that the plaintiff will be able to allege a valid cause of action. (*Leakes* v. *Shamoun* (1986) 187 Cal.App.3d 772, 778 [232 Cal.Rptr. 171].) It is within the court's discretion to deny leave where "the action is barred as a matter of law" or "[i]f, from the nature of the defects in the complaint it appears that the plaintiff cannot state a cause of action." (*State of California Automobile Dismantlers Assn.* v. *Interinsurance Exchange* (1986) 180 Cal.App.3d 735, 742 [225 Cal.Rptr. 676], citing *Saliter* v. *Pierce Brothers Mortuaries, supra,* 180 Cal.App.3d at p. 742; and *La Vista Cemetery Assn.* v. *American Sav. & Loan Assn.* (1970) 12 Cal.App.3d 365, 369 [90 Cal.Rptr. 722].)

We hold that the superior court did not abuse its discretion by denying leave to amend. We base this decision on the affirmative allegations of the

complaint, which show as a matter of law that the statute of limitations bars DeRose's causes of action, and on her failure to indicate, in the face of judicial invitation, that other facts helpful to her claims might exist.

## III. DISPOSITION

The judgment of dismissal is affirmed.

Agliano, P. J., and Capaccioli, J., concurred.

A petition for a rehearing was denied January 5, 1988, and appellant's petition for review by the Supreme Court was denied March 17, 1988. Broussard, J., was of the opinion that the petition should be granted.