Lawrence O'CONNOR, et al., Plaintiffs,

v.

BOEING NORTH AMERICAN, INC. and Rockwell International Corporation, Defendants.

No. CV 97–1554 ABC (RCX).

United States District Court, C.D. California.

June 12, 2000.

Capello & McCann, A. Barry Cappello, Santa Barbara, CA, Gancedo & Nieves, Tina Nieves, Pasadena, CA, for plaintiffs.

Paul, Hastings, Janofsky & Walker, John Reding, San Francisco, CA, for defendants.

ORDER GRANTING PLAINTIFFS' MOTION FOR RECONSIDERATION AND MODIFYING SUMMARY JUDGMENT MOTION

COLLINS, District Judge.

Plaintiffs the estate of Marjorie Taaffe, the estate of Bernard Hudson, Cheryl

Wernke, Kathy Hecker, and Maralyn Soifer[1] moved for reconsideration of this Court's March 28, 2000 Order, see 92 F.Supp.2d 1026. Defendants oppose. After reviewing the materials submitted by the parties and the case file, the Court GRANTS Plaintiffs' motion.

## I. Standard of Review

■ The Court's previous Order granted Defendants' motion for summary judgment on Plaintiffs' claims. Plaintiffs now move for reconsideration under Fed. R.Civ.P. 60(b) and Local Rule 7.16. Under Rule 60(b), a "court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason justifying relief from the operation of the judgment." Fed.R.Civ.P. 60(b). "[T]he words 'mistake' and 'inadvertence' ... may include mistake and inadvertence by the judge." *Kingvision Pay–Per–View v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir.1999).

Under Local Rule 7.16, a party may move for reconsideration based on "a manifest showing of a failure to consider material facts presented to the Court before such a decision."

## II. Analysis

### A. Plaintiffs living outside the San Fernando Valley.

■ Three of the Plaintiffs assert that the Court incorrectly imputed them with knowledge of the media coverage of the Rocketdyne facilities' contamination. Plaintiffs assert that the Court erred by failing to consider evidence that they did not live in Valley during the time period identified by the Court. The Court agrees.

### 1. Estate of Taaffe.

In its Order, the Court concluded that the representative for the estate of Taaffe

1. In this order, "Plaintiffs" will refer only to the five Plaintiffs that have moved for reconsideration.

had presented "no evidence" that he "did not live in the San Fernando Valley from 1989 to 1992." *See* 92 F.Supp.2d at 1049–50.

Plaintiffs point out, however, that the representative for the estate of Taaffe has lived in Florida since 1983. (Sears Decl. Ex. 29 at 5087.)[2] Defendants point out that the address chart appears to list the decedent's address and not the representatives. However, the decedent died in August 1983. (Taaffe Decl. ¶ 5.) The chart listing the address indicates that it is the address of the individual from 1984 to the present. (Sears Decl.Ex. 29 at 5087.) In light of those dates, it is reasonable to infer that the address refers to Mr. Taaffe, the representative, and not Ms. Taaffe, the decedent. Moreover, Mr. Taaffe signed his declaration in Florida. (Taaffe Decl. at 4.) Mr. Taaffe presents sufficient evidence to create a genuine issue of fact as to whether he lived in the Valley during the identified period of time.

Accordingly, the Court VACATES the summary judgment against the estate of Taaffe and DENIES Defendants' summary judgment as to the estate's wrongful death claim.

### 2. Estate of Bernard Hudson.

In its Order, the Court deemed Lila Hudson, the representative for the estate of Bernard Hudson, to be a subscriber of the *Daily News*. 92 F.Supp.2d at 1045. Plaintiffs, however, presented evidence that Lila Hudson lived in Morongo Valley, outside the San Fernando Valley, during the applicable period of time. (Sears Decl. Ex. 29 at 5086.) This evidence creates a genuine issue of fact as to whether she could be deemed a reader of the *Daily News*. Accord 92 F.Supp.2d at 1049 n. 45.

Accordingly, the Court VACATES the summary judgment against the estate of Hudson and DENIES Defendants' summary judgment as to the estate's wrongful death claim.

### 3. Cheryl Wernke.

In its Order, the Court deemed Wernke to be a reader of the *Daily News* or one of the Valley Papers. 92 F.Supp.2d at 1045. Plaintiffs, however, presented evidence that Wernke lived in Nevada, outside the Valley during the applicable period of time. (Sears Decl.Ex. 29 at 5088.) This evidence creates a genuine issue of fact as to whether she could be deemed a reader of the *Daily News* or the Valley Papers. Accord 92 F.Supp.2d at 1049, n. 45.

Accordingly, the Court VACATES the summary judgment against Wernke and DENIES Defendants' summary judgment as to her personal injury claim.

### B. Plaintiffs Diagnosed Within One Year of Filing.

Plaintiffs argue that the Court should amend its Order to allow two Plaintiffs, Hecker and Soifer, to sue for diseases diagnosed within the limitations period. Both of these Plaintiffs were earlier diagnosed with different diseases that Defendants' contamination allegedly caused outside the limitations period. Plaintiffs made the same argument on behalf of one Plaintiff, Hecker, in their summary judgment opposition and at the hearing. The Court, nevertheless, held that Hecker's claim was precluded because of her previous injury in 1983. 92 F.Supp.2d at 1038.

### 1. Suitability of motion for reconsideration.

■ Defendants assert that this Court should refuse to consider the argument on behalf of Hecker because Plaintiffs argued it in their summary judgment opposition and the Court considered it in its order. As to the argument on behalf of Soifer, Defendants contend that she fails to show why she did not raise this argument in the opposition to the summary judgment motion. However, the Court finds that this result inevitably flows from the way that

---

**2.** The Court notes that it relied on this exhibit in its previous Order. Accordingly, any objections that Defendants may have lodged against it were OVERRULED. *See* 92 F.Supp.2d at 1028 n. 2.

the parties handled the summary judgment motion.

Although the Court took the time to consider the material individual factors of each Plaintiff, both Defendants and Plaintiffs refused to do so. Defendants presented charts that summarized some factors concerning the Plaintiffs but lumped them together. Not surprisingly, they failed to address, in the summary judgment motion and reply or the opposition to the motion for reconsideration, the unique factual scenario of Hecker and Soifer.

Plaintiffs, at least on the surface, appear to focus on the different individual factors. Indeed, they argued in their opposition to the summary judgment motion that Plaintiffs' claims had to be considered on a "plaintiff by plaintiff basis." (Pls.' Opp. to Mot. for Summ. Judgment at 1.) Plaintiffs, however, failed to do so. The argument on behalf of Hecker consisted, in whole, of the following:

> Given the requirement of potential knowledge in order to start the accrual clock running, it is instructive to break the Plaintiffs down into the following five groups ... [:]
>
> 1. Plaintiffs who were diagnosed with an illness *inside* the statute of limitations: 2 (Noël Decl., ¶ 4);
>
> . . .
>
> Plaintiffs in Category 1 were diagnosed within one year of their respective filing dates and therefore should be excepted from this motion on that basis alone.

(*Id.* at 20–21. (emphasis in original).) The Court notes that Plaintiffs' opposition does not contain (1) a single express mention of Hecker; (2) any mention of the fact, pointed out by Defendants, that she had a previous injury allegedly caused by Defendants' contamination; or (3) any case citation or authority to address Hecker's individual circumstances.[3] Moreover, the Court's review of the Noël Declaration showed that the two persons in Category One were Hecker and Mary Hellerstein. Thus, although Plaintiffs submitted a declaration from Soifer stating that she suffered an injury within the limitations period, Plaintiffs failed to direct the Court to that information. Given the multitude of evidence presented by the parties, the Court is not surprised that it did not catch that information although it reviewed each of the Plaintiffs' declarations.

Plaintiffs' presentation, therefore, neglected to include specific and necessary information and had mistakes. Nevertheless, the Court finds that, under the circumstances, such neglect and mistakes were excusable. The Court finds that the motion for summary judgment was unique in that it sought to address class claims *and* the claims of more than 70 Plaintiffs. Moreover, the burden of showing that a claim fell outside the limitations period falls on Defendants. Thus, if the Court's ruling erroneously dismissed a claim that was not time-barred under the traditional statute of limitations, the Court can correct its error of law under Rule 60(b). *See Liberty Mutual Ins. Co. v. E.E.O.C.*, 691 F.2d 438, 441 (9th Cir.1982). Finally, Defendants do not challenge the timeliness of the motion.

▮ Accordingly, the Court exercises its discretion to consider the merits of Plaintiffs' motion for reconsideration.[4]

---

**3.** The Court notes that, at oral argument, Plaintiffs' counsel at least mentioned Hecker and noted that she had suffered prior injuries. Nevertheless, counsel's legal argument consisted of merely stating that the earlier illness "cannot connect to the type of cancer and the type of illness that she had within one year." (3/27/00 Hearing Transcript at 19–20.)

**4.** Generally, a motion under Fed.R.Civ.P. 60(b) is not appropriate absent a final judgment or order. Although the order on the summary judgment motion, in this case, is technically not a final order, the Court notes that Plaintiffs have moved for a final order pursuant to Fed.R.Civ.P. 54(b). The Court, simultaneously with this Order, has granted that motion. Thus, the Court's review of Hecker and Soifer's motion can be viewed as the Court granting the Rule 54(b) motion in their favor and then reviewing their Rule 60(b) motion. Thus, the Court finds that review under Rule 60(b) is appropriate.

## 2. Commencement of the Statute of Limitations.

 Under California law, a limitations "period cannot run before plaintiff possesses a true cause of action, by which we mean that events have developed to a point where plaintiff is entitled to a legal remedy, not merely a symbolic judgment such as an award of nominal damages." *Davies v. Krasna*, 14 Cal.3d 502, 513, 121 Cal.Rptr. 705, 535 P.2d 1161 (1975). However, "although a right to recover nominal damages will not trigger the running of the period of limitation, the infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory period." *Id.* at 514, 121 Cal.Rptr. 705, 535 P.2d 1161.

Although *Davies* provides that the limitations period does not begin to run when a plaintiff suffers nominal injury, the Court did not address the effect of the limitations period where two separate and distinct appreciable illnesses occur at different times. However, a California appellate court, in *Martinez–Ferrer v. Richardson–Merrell, Inc.*, 105 Cal.App.3d 316, 164 Cal.Rptr. 591 (1980), wrestled with that question. *Martinez–Ferrer* first described the general rule:

> As a general rule, where an injury, although slight, is sustained in consequences of the wrongful act of another, and the law affords a remedy therefor, the statute of limitations attaches at once. *It is not material that all the damages resulting from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages did not occur until a later date.*

*Id.* at 323, 164 Cal.Rptr. 591 (quoting from *Sonbergh v. MacQuarrie*, 112 Cal.App.2d 771, 773–774, 247 P.2d 133 (1952)) (emphasis added by *Martinez–Ferrer*). The court then concluded that applying the general rule to the facts of *Martinez–Ferrer* would be unjust:

> The sad fact is that [the plaintiff] would have been laughed out of court had he sued for his dermatitis and macula edema ... in 1962 and had he then attempted to be compensated for the speculative possibility that his 1960 ingestion of [a drug manufactured · by the defendant] might cause cataracts before that chance became a fact in 1976.... The simple fact is that rules developed against the relatively unsophisticated backdrops of barroom brawls, intersection collisions and slips and falls lose some of their relevance in these days of miracle drugs with their wondrous, unintended, unanticipated, and frequently long-delayed side effects.

*Id.* at · 323–24, 164 Cal.Rptr. 591. *Martinez–Ferrer* then held that the statute of limitations did not preclude a claim for the cataracts although the earlier injury, macula edema, had caused substantial harm. *Id.* at 325–27, 164 Cal.Rptr. 591.

Other California appellate courts have criticized *Martinez–Ferrer*. *See DeRose v. Carswell*, 196 Cal.App.3d 1011, 242 Cal. Rptr. 368 (1988). However, the criticism of *Martinez–Ferrer* has not come in cases reviewing a physical medical illness that is distinct and separate from an earlier injury. None of the cases have addressed the scenario where a disease first appeared *after* the limitations period had purportedly expired.

For instance, *DeRose* addressed the question of whether a person could sue for the psychological effects that she suffered from her stepfather's sexual abuse that occurred when she was a child. The plaintiff in that case sought to invoke *Martinez–Ferrer* on the basis that she did not become aware of the psychological effects of the sexual abuse until after the traditional limitations period had elapsed. *DeRose*, 196 Cal.App.3d at 1017–18, 242 Cal. Rptr. 368. The *DeRose* court noted that such unconsented sexual contact presents the type of case where "awareness of a wrongful act" carries with it "awareness of harm." *Id.* at 1018, 242 Cal.Rptr. 368. Thus, *DeRose* did not involve an effort to recover for the physical manifestation of a

disease caused by tortious conduct. *De-Rose* also did not involve distinct and separate illnesses arising from the same tortious conduct. *See id.* at 1017, 242 Cal. Rptr. 368 (noting that plaintiff alleged that she had suffered great fear at time of abuse). Thus, *DeRose*'s criticism at *Martinez–Ferrer* was wholly unnecessary to its holding.[5]

Moreover, although criticized by other appellate courts, *Martinez–Ferrer* has not been overruled by the California Supreme Court. In fact, the California Supreme Court has cited *Martinez–Ferrer* without leveling any criticism at it. *See Jolly v. Eli Lilly & Co.*, 44 Cal.3d 1103, 1110 n. 5, 245 Cal.Rptr. 658, 751 P.2d 923 (1988). Thus, *Martinez–Ferrer* is still good law in California.[6]

### 3. Kathy Hecker.

■ Hecker presented evidence that she was diagnosed with thyroid cancer in June 1996. (Hecker Decl. ¶ 5.) She joined this lawsuit on March 10, 1997, within one year of her diagnosis. 92 F.Supp.2d at 1029. She, therefore, creates a genuine issue of fact as to whether her claim, to the extent that it is based on the thyroid cancer, is time-barred. *See Martinez–Ferrer*, 105 Cal.App.3d at 325–27, 164 Cal.Rptr. 591. However, she was also diagnosed with other illnesses outside of the limitations period. For the reasons stated in the Court's previous Order, her claim, to the extent that it is *not* based on the thyroid cancer, is time-barred. Accordingly, the Court VACATES the summary judgment against Hecker. The Court

GRANTS partial summary judgment, as indicated herein, in favor of Defendants on the personal injury claim asserted by Hecker.

### 4. Maralyn Soifer.

Soifer presents evidence that she was diagnosed with lymphoma in July 1997. (Soifer Decl. ¶ 5.) She joined this lawsuit on December 22, 1997, within one year of that diagnosis. 92 F.Supp.2d at 1030. She, therefore, creates a genuine issue of fact as to whether her claim, to the extent that it is based on the lymphoma, is time-barred. *See Martinez–Ferrer*, 105 Cal. App.3d at 325–27, 164 Cal.Rptr. 591. At the same time, she was also diagnosed with another illness outside of the limitations period. For the reasons stated in the Court's previous Order, her claim, to the extent that it is *not* based on the lymphoma, is time-barred. Accordingly, the Court VACATES the summary judgment against Soifer. The Court GRANTS partial summary judgment, as indicated herein, in favor of Defendants on the personal injury claim asserted by Soifer.

### III. Conclusion

For the reasons articulated herein, the Court GRANTS Plaintiffs' motion. The Court's March 28, 2000 Order, 92 F.Supp.2d 1026, is modified as indicated herein.

**SO ORDERED.**

---

5. The Court also notes that the California legislature effectively overruled the holding in *DeRose* by tolling the limitations period in child sexual abuse cases until a plaintiff discovered or reasonably should have discovered that the psychological injury or illness *was caused by* the childhood sexual abuse. *See Ramona v. Superior Court*, 57 Cal.App.4th 107, 112 n. 6, 66 Cal.Rptr.2d 766 (1997); Cal.Civ.Proc.Code § 340.1.

6. The Court further notes that *Martinez–Ferrer* is consistent with California's treatment of the illnesses caused by asbestos exposure. *See*

*Hamilton v. Asbestos Corp., Ltd.*, 22 Cal.4th 1127, 95 Cal.Rptr.2d 701, 998 P.2d 403 (2000) (allowing second lawsuit for illness resulting from asbestos exposure that had spawned earlier lawsuit for different illnesses). Although asbestos cases are subject to a special statute of limitations in California, *see* Cal.Civ.Proc.Code § 340.2, California's treatment of the limitations period in asbestos injuries is instructive as to continued viability of *Martinez–Ferrer* in cases involving multiple latent illnesses caused by exposure to dangerous substances.