[No. D002536. Fourth Dist., Div. One. Apr. 1, 1986.]

STATE OF CALIFORNIA AUTOMOBILE DISMANTLERS
ASSOCIATION, Plaintiff and Appellant, v.
INTERINSURANCE EXCHANGE OF THE AUTOMOBILE CLUB OF
SOUTHERN CALIFORNIA et al., Defendants and Respondents.

**COUNSEL**

Roy B. Garrett for Plaintiff and Appellant.

William S. Boggs, Mark C. Zebrowski, Gray, Cary, Ames & Frye and Graham K. Fleming for Defendants and Respondents.

## Opinion

**STANIFORTH, Acting P. J.**—This is an appeal from a judgment of partial dismissal after a demurrer was sustained to State of California Automobile Dismantlers Association's (Association) first amended complaint (complaint) without leave to amend. The appeal primarily concerns construction of certain statutes affecting Association.

## The Complaint

### *General Allegations*

Association's complaint alleges Interinsurance Exchange of the Automobile Club of Southern California (Exchange) is an automobile casualty insurance company doing business in Southern California. Association further alleges total loss salvage vehicles[1] obtained by insurance companies from their insureds must be disposed of pursuant to Vehicle Code[2] section 11515.

Paragraph six and seven of the complaint allege defendant County Auto Pool (Pool)[3] holds auctions and disposes of total loss salvage vehicles as an agent for Exchange. Paragraph eight alleges Pool has sold total loss salvage vehicles to buyers who are not licensed as is Association. Paragraph nine alleges neither Pool nor these unlicensed buyers have appropriate resale numbers for exemption from the collection of sales taxes at the time of the purchase and Pool has not remitted sales tax for such sales. The complaint further alleges the State Board of Equalization was informed of these facts in 1981 but has taken no action to collect sales taxes allegedly due.

Paragraph 13 alleges Exchange also sells total loss salvage automobiles to individuals who are engaged in the business of buying, selling or dealing in vehicles but who are not licensed as automobile dismantlers. It is alleged the Department of Motor Vehicles (DMV) has announced total loss salvage

---

[1] Vehicle Code section 544 defines a total loss salvage vehicle as: "'Total loss salvage vehicle' means a vehicle of a type subject to registration which has been wrecked, destroyed, or damaged, to such an extent that the owner, or the insurance company which insured the vehicle, considers it uneconomical to repair the vehicle and because of this, the vehicle is not repaired by or for the person who owned the vehicle at the time of the event resulting in damage."

[2] All statutory references are to the Vehicle Code unless otherwise specified.

[3] Section 543 defines salvage pool as: "'Salvage pool' means a person engaged exclusively in the business of disposing of total loss salvage vehicles or recovered stolen vehicles, or both, for, or on behalf of, insurance companies or authorized adjusters. A salvage pool shall maintain an accurate record of every vehicle acquired and every vehicle disposed of."

vehicles may be disposed of to all individuals whether licensed as dismantlers or not. Following the foregoing preliminary allegations regarding the parties' status and positions, four causes of action are pleaded.

### FIRST CAUSE OF ACTION

*Declaratory Relief*

Association alleges there is a dispute between Association and Exchange in that Association maintains total loss salvage may be sold only to a licensed California automobile dismantler while Exchange contends total loss salvage may be disposed to any and all individuals whether licensed as dismantlers or not. Association requests a declaration that (1) insurance companies may sell total loss salvage vehicles only to California licensed automobile dismantlers; (2) sales of total loss salvage vehicles to anyone other than a licensed automobile dismantler are unlawful; and (3) the DMV's position entities other than licensed automobile dismantlers may buy salvage automobiles is based upon an improper interpretation of applicable Vehicle Code sections. Association seeks to compel the DMV to require the salvage pools to sell only to California licensed automobile dismantlers.

### SECOND CAUSE OF ACTION

*Injunction for Unfair Trade Practice*

It is alleged Exchange is engaged in an unfair trade practice in that the sale of total loss salvage automobiles to entities not licensed, as is Association, is illegal and violative of the Vehicle Code sections. Association seeks to enjoin Exchange from selling to any entities unlicensed by the state. Association also demands damages.

### THIRD CAUSE OF ACTION

*Writ of Mandate to Collect Sales Tax*

Association charges the State Board of Equalization has refused to respond to Association's request to investigate and collect sales taxes due from automobile salvage pools and insurance companies' sales. Association seeks a writ of mandate to compel collection of such sales taxes.

### FOURTH CAUSE OF ACTION

*Violation of Dismantler Law*

Association alleges Exchange has a license to engage in the business of insurance but is also in the business of buying and selling automobile salvage,

therefore it is required to have a dismantler's license. Association alleges insurance companies are in violation of the law by purchasing salvage automobiles without holding a dismantler's license or complying with other Vehicle Code sections. Association alleges Exchange asserts a right to purchase salvage automobiles without being licensed as a dismantler and is thus violating the laws.

The trial judge sustained the demurrer to the complaint without leave to amend. In the minute order, these pertinent reasons were stated:

"1. The gravamen of this action is that demurring defendants have unlawfully and unfairly sold salvaged vehicles in violation of the Vehicle Code provisions.

"2. As a matter of law, these defendants are not within the scope of statutes regulating auto dismantlers.

"3. There is, accordingly, no cognizable dispute subject to declaratory relief."

### DISCUSSION

### I

Appellate review of a judgment of dismissal entered following the sustaining of a demurrer without leave to amend is governed by the following rules: "In determining the sufficiency of a complaint against a general demurrer, we consider the demurrer as admitting all material and issuable facts properly pleaded. [Citation.] Although facts should be averred in 'ordinary and concise language' [citation], precise form and language are not essential. '[T]he rule is, that if upon a consideration of all the facts stated it appears that the plaintiff is entitled to any relief at the hands of the court against the defendants, the complaint will be held good, although the facts may not be clearly stated, or may be intermingled with a statement of other facts irrelevant to the cause of action shown, or although the plaintiff may demand relief to which he is not entitled under the facts alleged.' [Citation.]" (*Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541, 549 [99 Cal.Rptr. 745, 492 P.2d 1137].)

Where the complaint is found defective, great liberality should be exercised in permitting a plaintiff to amend. It ordinarily constitutes an abuse of discretion to sustain a demurrer without leave to amend if there is

a reasonable possibility the defect can be cured by amendment. (See *Lemoge Electric* v. *County of San Mateo* (1956) 46 Cal.2d 659, 664 [297 P.2d 638].)

Where, however, amendment could not correct a deficiency in the complaint or where the action is barred as a matter of law, the demurrer is properly sustained without leave to amend. (See *Saliter* v. *Pierce Brothers Mortuaries* (1978) 81 Cal.App.3d 292 [146 Cal.Rptr. 271].) Leave to amend is appropriately withheld where it is clear the plaintiff is seeking a legally impossible result. (*Robinson* v. *Robinson* (1961) 198 Cal.App.2d 193, 197 [17 Cal.Rptr. 786].) If, from the nature of the defects in the complaint it appears the plaintiff cannot state a cause of action, a demurrer is properly sustained without leave to amend. (*La Vista Cemetery Assn.* v. *American Sav. & Loan Assn.* (1970) 12 Cal.App.3d 365, 369 [90 Cal.Rptr. 722].)

Finally, where the statute is clear in its demands upon the parties, no dispute exists; and thus, demurrer to a complaint seeking declaratory relief is properly sustained. (*Stribling* v. *Mailliard* (1970) 6 Cal.App.3d 470, 475 [85 Cal.Rptr. 924].)

## II

The principal question presented to this court by the complaint is whether Association correctly asserts Exchange and Pool are required to hold a California automobile dismantler's license. Association contends a "total loss salvage vehicle" may be disposed of only to buyers who have such a license. To support these broad contentions Association relies on a number of sections, including sections 220, 11500, 11515, 11520.

Section 220 provides in part: "An 'automobile dismantler' is any person not otherwise expressly excluded by Section 221 who:

"(a) Is engaged in the business of buying, selling, or dealing in vehicles of a type required to be registered under this code, for the purpose of dismantling the same, who buys or sells the integral parts and component materials thereof, in whole or in part, or deals in used motor vehicle parts. This section does not apply to the occasional and incidental dismantling of vehicles by dealers who have secured dealers plates from the department for the current year whose principal business is buying and selling new and used vehicles, or by owners who desire to dismantle not more than three personal vehicles within any 12-month period."

Exchange first contends it is an automobile insurance company not subject to the licensing requirements imposed upon automobile dismantlers because

it does not buy, sell or deal in total loss salvage vehicles.[4] When an insured's vehicle is reduced to total salvage, Exchange merely forwards the insured's certificate of ownership or other documentation to the DMV as required of an automobile insurance company by section 11515. (§ 11515, subd. (a); see III *infra*.)[5] Second, Exchange contends it is not involved with salvage vehicles for the purpose of dismantling them. Further, such involvement is not charged in the pleadings. Rather, Exchange's involvement with salvage vehicles relates to its efforts to mitigate its loss on a total loss accident by recording a lien on the proceeds from a sale of the total loss vehicle. Pool's position on appeal is equivalent to Exchange. Pool contends it also is not involved in the business of dismantling salvage vehicles or in the business of buying or selling total loss salvage vehicles.

### III

Exchange is an insurance company. Controlling statutes indicate the business of Exchange, as an insurance company does not encompass buying, selling, dismantling or repairing vehicles of any sort whether sound or wrecked. The plain language of section 220, *supra,* forces the conclusion that under no circumstances would the lawful authorized activities of Exchange come within the legislative definition of an automobile dismantler.

An insurance company's circumscribed role in the total loss vehicle business is specifically set forth in section 11515, subdivision (a), which provides: "Whenever an insurance company makes a total loss settlement on a total loss salvage vehicle, the insurance company shall, within 10 days from the settlement of the loss, forward the properly endorsed certificate of ownership or other evidence of ownership acceptable to the department, and a three dollar ($3) fee, to the department. The Department, upon receipt

---

[4]For purposes of analyzing the order sustaining the demurrer, we assume Exchange and Pool are "engag[ing] in the business of buying and selling automobile salvage in . . . California."

[5]These additional statutory duties are imposed by section 11515 on the insurance companies: "(b) Whenever the owner of a total loss salvage vehicle retains possession of the vehicle, the insurance company shall notify the department of the retention on a form prescribed by the department. The insurance company shall also notify the insured or owner of the insured's or owner's responsibility to comply with the provisions of this subdivision. The owner shall, within 10 days from the settlement of the loss, forward the properly endorsed certificate of ownership or other evidence of ownership acceptable to the department, and a three dollar ($3) fee, to the department. The department, upon receipt of the certificate of ownership or other evidence of title and the three dollar ($3) fee, shall issue a salvage certificate for the vehicle.

"(c) Whenever a total loss salvage vehicle is not the subject of an insurance settlement, the owner shall, within 10 days from the loss, forward the properly endorsed certificate of ownership or other evidence of ownership acceptable to the department, and a three dollar ($3) fee, to the department."

of the certificate of ownership or other evidence of title and the three dollar ($3) fee, shall issue a salvage certificate for the vehicle."

While neither this nor any other statute specifies where or with whom the wrecked cars are to be placed for sale, traditionally, sales of salvage vehicles by insurance companies occur through a salvage "pool." A "pool," by definition, is "a person engaged exclusively in the business of disposing of total loss salvage vehicles or recovered stolen vehicles, or both, for, or on behalf of, insurance companies or authorized adjusters." (§ 543.) Defendant Pool is such a pool and disposes, by auction, such vehicles only as an agent for insurance companies or adjusters, none others.

The foregoing Vehicle Code sections do not require Exchange to become the owner of an insured's total loss salvage vehicle; nor do these statutes prohibit taking such an ownership interest—these statutes support the practices relied upon by Exchange, to wit: the *insured* retains ownership of the car until the car is sold at a salvage auction (Pool) at which time ownership is transferred directly to the purchaser. This contention is supported by section 11515, subdivision (e), which provides, in relevant part: "Upon sale or disposal of a total loss salvage vehicle, the owner or salvage pool, if the vehicle is sold or disposed of through a salvage pool, shall deliver a properly endorsed salvage certificate to the purchaser." If Exchange engaged generally in the *sale* as owner (not as lienholder on behalf of its insured) of salvage vehicles, it still would not come under the aegis of the dismantler statutes.

Automobile dismantlers (in contrast to insurance companies, whether engaged in the *insurance* business or as alleged by Association in the *sale* of salvage vehicles) are subject to a whole series of specific regulatory law found in sections 320 and 11500 et seq. Under this comprehensive regulatory scheme, dismantlers must have a license not revoked, must undergo investigation and are required to keep books and records subject to inspection at any time. Further scrutiny of this regulatory scheme shows these laws may not reasonably be applied to automobile insurance companies. Specifically, sections 320, 11513 and 11514 require a dismantler maintain an office and dismantling area properly zoned for such business. The dismantler must have a sign not less than 32 square feet on his premises, must promptly notify the Department of Justice and DMV of acquisitions of all vehicles except those received from insurance companies with a salvage certificate, must deliver title, documents to the DMV and destroy the license plates, and maintain full records. Violation of any of these provisions constitutes a misdemeanor. (§§ 11520, subd. (e); 40000.1; see *Escondido Imports, Inc.*

v. *Department of Motor Vehicles* (1983) 145 Cal.App.3d 834 [193 Cal.Rptr. 772].)

## IV

■ Pool is also outside the scope of the plain words of the statutory definition of automobile dismantler for the following reasons. The business of Pool is defined in section 543. (See fn. 3, *ante.*) Section 11515, subdivision (e), specifies Pool's functions: "Upon sale or disposal of a total loss salvage vehicle, the owner or salvage pool, if the vehicle is sold or disposed of through a salvage pool, shall deliver a properly endorsed salvage certificate to the purchaser within 10 days after payment in full for the salvage vehicle and shall also comply with Section 5900. The department shall accept the endorsed salvage certificate in lieu of the certificate of ownership or other evidence of ownership when accompanied by an application and other documents and fees as may be required by the department."

Pool operates under separate specific accountability provisions for auction vehicles. Under section 543, Pool is not engaged in the business of buying, selling or dealing in total loss salvage vehicles except as "agent" for the insurance company or the owner. Pool never acquires ownership of the vehicles it sells at auction. Rather, Pool's lawful functions are those of a broker in charge of arranging an auction sale of the vehicle, administering the transfer of the vehicle from the owner to the buyer and taking a commission for its service. It remits the proceeds of the sale to the owner of the car and/or to the insurance lienholder if such lien exists. Pool is not engaged (and is not so charged) in the business of dismantling cars or selling parts. As previously articulated, salvage pools, like automobile insurance companies, are subject to statutory requirements which are separate and distinct from those imposed upon the dismantlers under the Vehicle Code.

We conclude the dismantler statutes do not specifically apply to Exchange or Pool to require them to be licensed under these statutes, nor are these laws subject to any rational interpretation that would support finding such a requirement.

## V

■ In the first and second causes of action, Association seeks to prohibit sales of salvage vehicles to buyers who are not California licensed dismantlers. It is charged Pool sells total loss salvage vehicles to individual and entities "not licensed as California Automobile Dismantlers" or as "dealers." Sales are made to individuals without appropriate resale numbers

and without collection of California sales taxes. For the following reasons, these allegations fail to state a cause of action.

There is no requirement in California law that salvage vehicles sold through a statutory "pool" be sold only to California licensed dismantlers. The DMV, which is responsible for regulating such sales, does not assert such a requirement. Section 221 supports such conclusion. Total loss salvage vehicles may be disposed of to a number of different individual entities who are not California licensed dismantlers. This section specifically excludes a number of individuals and businesses from the definition of an automobile dismantler. For example, subdivision (a)(2) of this section, excludes, inter alia, "[t]he owner of any premises or property used in conjunction with any . . . motor vehicle repair business."

Association does not allege insurance companies sell total loss salvage vehicles to individuals who dismantle them in California without a California dismantler's license. Thus, it is a fair inference the complaint (count I) seeks to prohibit *sales to buyers who do not do business in California but take the vehicles out of the United States to dismantle them.* If this is the gravamen of the complaint, it fails to state a cause of action. As noted above, there is no law requiring such sales be made to only California licensed dismantlers. Further, *California has no jurisdiction to regulate or prosecute [dismantling] activities conducted in another state or outside the United States.* (*Archibald* v. *Cinerama Hawaiian Hotels, Inc.* (1977) 73 Cal.App.3d 152, 159 [140 Cal.Rptr. 599]; *Bigelow* v. *Virginia* (1975) 421 U.S. 809, 824-825 [44 L.Ed.2d 600, 613-614, 95 S.Ct. 2222].)

VI

The foregoing conclusions are supported by an examination of the legislative purpose of the dismantler's regulatory scheme.

The purpose of the foregoing statutory scheme regulating dismantlers is to prevent or control the theft of motor vehicles, the trafficking in stolen vehicles and their parts and the profits available from such activities. (*People* v. *Shope* (1982) 128 Cal.App.3d 816, 823-824 [180 Cal.Rptr. 567]; *People* v. *Lopez* (1981) 116 Cal.App.3d 600, 607 [172 Cal.Rptr. 236].) To require an automobile insurance company to obtain a dismantler's license or to comply with the other regulations applicable to dismantlers, for example, those concerned with the business site and sign requirement, would not further these legislative purposes. These legislative purposes highlight the conclusion that with limited, specific exceptions, the statutes regulating

automobile dismantlers were not intended to apply to Exchange or other insurance companies.

The Legislature has expressly provided for different obligations and duties for an insurance company than are provided for an automobile dismantler. For example, when an insurance company reports total loss settlement on a total loss salvage vehicle under section 11515, the reporting duties under section 11515 are separate and distinct from the duties required of dismantlers under section 11520. When the insurance company performs its duties under section 11515, the dismantler is relieved of several of its obligations under section 11520. (§ 11520, subd. (b).) Such separate duties indicate a legislative intent that insurance companies are not within the definition of automobile dismantlers.

The dismantler statutes (§ 11500 et seq.) are thus clear in their purpose. They show no intent to be applied to an automobile insurance company. We conclude neither Exchange nor Pool is subject to regulation as an automobile dismantler. The demurrer to the complaint was properly sustained without leave to amend.

## VII

As to the third cause of action, a demurrer was sustained without leave to amend on an almost identical cause of action in the original complaint on March 30, 1984. No appeal was taken from that order nor was a motion for reconsideration made nor any other form of review sought. This is an impermissibly untimely attempt to appeal the court's earlier order.

## CONCLUSION

Assuming Association has standing to sue (it is not in the business of dismantling or buying automobiles for dismantling; it is a nonprofit corporation which represents automobile dismantlers throughout California by "voluntary association"), it has not stated a cause of action. There appears no reasonable probability it could, under the law and the facts alleged, state a cause of action.

The judgment of dismissal is affirmed.

Butler, J., and Lewis, J., concurred.