Filed 5/29/24 Certified for Publication 6/21/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| RYAN OWEN FRAYO,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ANDREW D. MARTIN et al.,<br><br>    Defendants and Respondents. | H050689<br>(Santa Cruz County<br>Super. Ct. No. 22CV00610) |

Appellant Ryan Owen Frayo appeals the judgment entered after the trial court sustained a demurrer to his first amended complaint without leave to amend. After being terminated for refusing to take a COVID-19 test, Frayo sued his employer, A&A Organic Farms Corporation (A&A) and its owners, Andrew D. Martin and Aimee M. Raphael-Martin (collectively with A&A, respondents), alleging they violated the Confidentiality of Medical Information Act (CMIA) (Civ. Code, § 56 et seq.)[1]. After providing Frayo an opportunity to cure the defects in his initial complaint, the trial court sustained A&A's demurrer to Frayo's first amended complaint, finding Frayo failed to state a claim under the CMIA. For the reasons we explain below, we affirm.

---

[1] Unless otherwise specified, all undesignated statutory references are to the Civil Code.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Ryan Owen Frayo was a salesman employed by A&A, owned by husband and wife, Andrew D. Martin and Aimee M. Raphael-Martin[2].  In August 2020, at the height of lockdowns and business shutdowns due to the COVID-19 pandemic, Frayo was a leading salesman for A&A.

When the pandemic started, A&A implemented COVID-19 guidelines to protect A&A's employees and their families, including a requirement that its employees provide a negative COVID-19 test before returning to work if they were exposed to or exhibited symptoms consistent with the virus.

On May 17, 2021, Frayo sent text messages to Martin stating he was not feeling well, woke up drenched in sweat, and had a pounding headache.  Pursuant to A&A's COVID-19 guidelines, Martin requested that Frayo complete a COVID-19 test from a CVS pharmacy[3] before returning to work.  Frayo responded he did not want to get a COVID-19 test.  Martin told Frayo "[i]f you decide not to take the test tomorrow, we will consider this your resignation."

The next day, Martin called Frayo to ask if he had taken the COVID-19 test and if he could provide Martin with the results.  Frayo again declined, stating he was "not going to take a test and turn it over to [Martin] because doing so is against the law" and also against Frayo's faith and beliefs.  Frayo said he was not resigning but asked if A&A had terminated his employment based on his refusal to take the COVID-19 test. Ralphael-Martin told Frayo that A&A was consulting with legal counsel on the issue and would respond to him accordingly.  On May 19, 2021, A&A informed Frayo that his employment would be terminated "if he did not submit to take a COVID-19 test from

---

[2] For ease of reference, we refer to Andrew Martin as "Martin," Aimee Raphael- Martin as "Raphael-Martin," and the two together as "the individual defendants."

[3] Based on Frayo's claims, we understand that a "COVID-19 test" refers to a third party administered test, not a self-administered test.

CVS or other health care service provider and then disclose the information to his employer." Frayo did not comply. The following day, A&A terminated Frayo's employment.

In March 2022, Frayo sued respondents, alleging two causes of action under section 56.20 of the CMIA. First, Frayo alleged respondents violated section 56.20, subdivision (b) (hereafter section 56.20(b)), by terminating his employment when he refused to provide a COVID-19 test result. Second, Frayo claimed respondents violated section 56.20, subdivision (c) (hereafter section 56.20(c)), when A&A used Frayo's description of his symptoms to Martin (i.e., that he was feeling unwell, sweating and had a headache) as a basis to terminate his employment.

On May 9, 2022, Frayo voluntarily dismissed Martin and Raphael-Martin from the initial complaint without prejudice. A&A then demurred to the complaint, contending that Frayo failed to state a claim. A&A argued that Frayo did not and could not plead certain necessary elements under the CMIA, specifically that (1) A&A requested that Frayo sign an authorization to release his medical information as required by section 56.20(b), and (2) A&A possessed Frayo's "medical information" as defined under the CMIA as required for a claim under section 56.20(c).

At the hearing on the demurrer, the trial court agreed with A&A that the elements had not been demonstrated and expressed doubt regarding Frayo's ability to establish them. The trial court explained, "[t]he statute and the jury instructions are both very clear in what needs to be shown, whether—is there an authorization? Was there evidence of the—that the Defendant actually had medical information?"[4] Frayo's counsel

_____

[4] A summary of the essential factual elements for a section 56.20(b) claim provided in jury instructions CACI No. 3071 is as follows: (1) that defendant asked plaintiff to sign an authorization so that defendant can obtain medical information about plaintiff from his health care providers; (2) that plaintiff refused to sign the authorization; (3) that defendant engaged in retaliatory acts (e.g., termination of the plaintiff's employment); (4) that plaintiff's refusal to sign the authorization was a substantial (continued)

3

represented that the defects could be cured.  The trial court sustained the demurrer but granted Frayo leave to amend.

In his first amended complaint, although Frayo added new allegations, the ultimate facts alleged remained the same:  respondents asked him to take a COVID-19 test before returning to work, he refused, and respondents terminated him on that basis.  He again named Martin and Raphael-Martin as individual defendants.  A&A demurred to the first amended complaint, again asserting Frayo had not pled the necessary facts to support a claim under the CMIA.  A&A argued the demurrer should be sustained as to all defendants because the amended complaint failed to assert a claim against any defendant and because the CMIA applies only to employers, not individuals.[5]

The trial court sustained A&A's demurrer to the first amended complaint without leave to amend.  As to Frayo's first cause of action, the trial court concluded that he failed to state a claim under section 56.20(b) because the statute prohibits employer discrimination based on an employee's refusal to sign an authorization to release his medical information.  The trial court stated, "Plaintiff alleges that he was asked and refused to take a COVID test—not that he refused to 'sign an authorization.' "

Additionally, the trial court noted the exception to liability provided under section 56.20(b) which states, "nothing in this section shall prohibit an employer from taking

---

motivating reason for defendant's decision; (5) that plaintiff was harmed; (6) that defendant's conduct was a substantial factor in causing plaintiff's harm; and (7) even if plaintiff proves all of the above, the defendant's conduct was not unlawful if defendant provides the lack of medical information made it necessary to take the retaliatory action against plaintiff.

[5] The status of the individual defendants in the trial court is not clear on the record before us.  It appears that Martin and Raphael-Martin did not individually appear or respond to the amended complaint in the trial proceedings as the demurrer to Frayo's amended complaint was brought solely by A&A.  However, the record is also silent as to whether Frayo obtained court approval to reinsert Martin and Raphael-Martin as defendants in the amended complaint and whether Frayo had effectuated service of the summons and amended complaint on the individual defendants.  (*Phoenix of Hartford Ins. Cos. v. Colony Kitchens* (1976) 57 Cal.App.3d 140, 147.)

4

such action as is necessary in the absence of medical information due to an employee's refusal to sign an authorization . . . ." (§ 56.20(b).) The trial court reasoned A&A's termination of Frayo's employment qualified as a necessary action in the absence of Frayo's COVID-19 test result, so long as A&A's COVID-19 guidelines were otherwise lawful. Because Frayo did not allege A&A's COVID-19 guidelines to be unlawful, the trial court concluded he failed to state a claim under section 56.20(b).

The trial court sustained the demurrer to Frayo's second cause of action under section 56.20(c) because Frayo failed to allege A&A had possession of his medical information, as defined by the statue. In the first amended complaint, Frayo alleged the information he provided to Martin about his illness, including his description of symptoms, constituted medical information under the CMIA, and respondents' use of that information to terminate him was a violation of section 56.20(c). In opposition to A&A's demurrer, Frayo conceded the symptom descriptions he relayed to Martin did not fall within the CMIA's definition of medical information. Instead, Frayo argued the COVID-19 test result A&A demanded from him constituted medical information under the CMIA and A&A's intent to use his test result to determine whether he could return to work without his signed authorization was a violation of section 56.20(c). The trial court rejected Frayo's contentions, ruling that since Frayo alleged he never took the COVID-19 test, A&A was never in possession of Frayo's medical information as that term is defined under the CMIA, and thus could not have violated section 56.20(c).

Following its orders sustaining A&A's demurrer as to all claims, the trial court entered judgment in favor of respondents. Frayo timely appealed.[6]

---

[6] On December 23, 2022, Frayo filed a notice of appeal challenging the order sustaining A&A's demurrer. The judgment dismissing the action against all defendants being subsequently entered on March 8, 2023, on our own motion, we deemed Frayo's notice of appeal filed as of that date.

5

## II. DISCUSSION

Frayo argues the trial court wrongly interpreted and improperly applied sections 56.20(b) and (c) of the CMIA, and additionally erred when it dismissed the individual defendants from the complaint without a separate ruling on the issue of their personal liability. Respondents contend the trial court properly applied the law, and because Frayo was unable to provide factual allegations to satisfy the elements necessary under the CMIA, the dismissal was proper as to all defendants. We have independently reviewed Frayo's amended complaint and conclude that Frayo does not state a cognizable CMIA claim under either section 56.20(b) or (c).

### A. Standard of Review

" 'The purpose of a demurrer is to test the sufficiency of a complaint by raising questions of law.' " (*Candelore v. Tinder, Inc.* (2018) 19 Cal.App.5th 1138, 1143.) "We review an order sustaining a demurrer de novo, exercising our independent judgment as to whether a cause of action has been stated as a matter of law." (*Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1190.) In doing so, " '[w]e assume the truth of the properly pleaded factual allegations, [and] facts that reasonably can be inferred from those expressly pleaded.' [Citation.] But we do not assume the truth of 'contentions, deductions, or conclusions of law.' [Citation.] We liberally construe the complaint 'with a view to substantial justice between the parties,' drawing 'all reasonable inferences in favor of the asserted claims.' [Citations.]" (*Liapes v. Facebook, Inc.* (2023) 95 Cal.App.5th 910, 919.) "[B]ecause we are reviewing the trial court's ruling and not its reasoning, we may affirm on any ground supported by the record regardless of whether the trial court relied upon it." (*Doe v. Roman Catholic Archbishop of Los Angeles* (2016) 247 Cal.App.4th 953, 960.)

"When a demurrer is sustained without leave to amend, 'we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the

trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.' [Citation.] Plaintiff has the burden to show a reasonable possibility the complaint can be amended to state a cause of action." (*Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1609.) "Where, however, amendment could not correct a deficiency in the complaint . . . the demurrer is properly sustained without leave to amend." (*State of California Automobile Dismantlers Assn. v. Interinsurance Exchange* (1986) 180 Cal.App.3d 735, 742 (*Automobile Dismantlers*).)

### B. Frayo Failed to State a Cause of Action Under the CMIA

#### 1. The Applicable CMIA Provisions

The Legislature enacted the CMIA "to protect the confidentiality of individually identifiable medical information obtained from a patient by a health care provider, while at the same time setting forth limited circumstances in which the release of such information to specified entities or individuals is permissible." (*Loder v. City of Glendale* (1997) 14 Cal.4th 846, 859 (*Loder*).) Although the CMIA principally governs disclosures by health care providers, chapter three of the CMIA governs an employer's use and disclosure of an employee's medical information. (§§ 56.20-56.245; *Rossi v. Sequoia Union Elementary School* (2023) 94 Cal.App.5th 974, 986 (*Rossi*).)

Section 56.20 provides that an employer who receives the medical information of its employees must ensure its confidentiality. (*Id.*, subd. (a).) Medical information is defined as "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental or physical condition, or treatment." (§ 56.05, former subd. (i), now subd. (j), added by Stats. 2023, ch. 374, § 1.5, p. 92, eff. Jan. 1, 2024.[7])

---

[7] The legislature amended portions of the CMIA throughout 2021 to 2024 which are not material to our analysis in this case. We cite to the former version of the statute effective at the time of the trial court's ruling on A&A's demurrer in November 2022.

Under section 56.20(c), absent certain exceptions, the employer in possession of the employee's medical information cannot use or disclose such information "which the employer possesses pertaining to its employees without the patient having first signed an authorization under Section 56.11 [disclosure by health care providers, et al.] or Section 56.21 [disclosure by employer] permitting such use or disclosure. . . ." (§ 56.20(c).)  An "authorization" under the CMIA must, among other things, be in writing, signed, and dated by the patient or an authorized representative.  (§ 56.05, subd. (a), added by Stats. 2021, ch. 190, § 1; § 56.11, added by Stats. 2009, ch. 493, § 2; § 56.21, added by Stats. 2006, ch. 538, § 39.)

If an employee refuses to authorize the use or disclosure of his medical information, section 56.20(b) provides that "[n]o employee shall be discriminated against in terms or conditions of employment due to that employee's refusal to sign an authorization under this part.  However, nothing in this section shall prohibit an employer from taking such action as is necessary in the absence of medical information due to an employee's refusal to sign an authorization . . . ."  (§ 56.20(b).)

### 2. *Frayo's Section 56.20(b) Claim*

Frayo claims respondents discriminated against him in violation of section 56.20(b) by terminating his employment when he refused to take a third party administered COVID-19 test and provide the results to respondents.

Section 56.20(b) prohibits an employer from discriminating against an employee for refusing to sign an authorization to release his medical information.  (§ 56.20(b), ["No employee shall be discriminated against in terms or conditions of employment due to that employee's refusal to sign an authorization under this part."].)  "An employer 'discriminates' against an employee in violation of section 56.20, subdivision (b), if it improperly retaliates against or penalizes an employee for refusing to authorize the employee's *health care provider* to disclose confidential medical information *to the employer or others* (see Civ. Code, § 56.11), or for refusing to authorize *the employer* to

8

disclose confidential medical information relating to the employee *to a third party* (see Civ. Code, § 56.21)." (*Loder, supra*, 14 Cal.4th at p. 861.)

The first two elements of a prima facie section 56.20(b) claim are "that defendants asked [plaintiff] to sign an 'authorization' (§§ 56.05, subd. (a), 56.11) and [plaintiff] refused to do so. (See CACI No. 3071.)" (*Rossi, supra*, 94 Cal.App.5th at p. 989.) An "authorization" is defined in the CMIA as a written document that allows a health care provider or employer to disclose an individual's medical information to others. (§ 56.05, subd. (a) ["permission granted in accordance with Section 56.11 or 56.21 for the disclosure of medical information."].) Sections 56.11 and 56.21 detail what must be included in an "authorization" under the CMIA, including typeface size, language clearly separated from any other print on the page, the signature of the patient and date of signature, the name of the employer authorized to disclose the medical information, limitations on the use of the medical information by the person authorized to receive the medical information, the date the document ceases to authorize an employer to release information, and the right of the patient to receive a copy of the authorization. (§§ 56.11, 56.21.)

Frayo concedes respondents never requested that he sign a CMIA defined authorization to release his medical information and he never refused to sign such an authorization. He argues instead that his refusal to take a COVID-19 test is equivalent to a refusal to sign an authorization under the CMIA. Respondents argue that under the plain language of section 56.20(b), as the employer did not request Frayo to sign an authorization as defined in the CMIA, and he did not refuse to sign such authorization, Frayo cannot state a claim under section 56.20(b).

We find *Rossi* instructive here. Plaintiff, who was a school worker, was terminated for refusing to disclose her COVID-19 vaccination status or undergo weekly COVID-19 testing. (*Rossi, supra*, 94 Cal.App.5th at pp. 979-982.) She sued the school district, school, and other individuals under the CMIA, alleging violations of sections

9

56.20 (b) and (c). (*Id.* at pp. 979, 982.) The trial court sustained defendants' demurrer without leave to amend, and plaintiff appealed. (*Id.* at p. 984.) While the appellate court ultimately affirmed the trial court based on the necessity exception in section 56.20(b), it expressed "some doubt as to whether plaintiff adequately pleaded the first two elements of a prima facie section 56.20(b) claim: that defendants asked her to sign an 'authorization' [citations] and she refused to do so. " (*Rossi*, at p. 989.) Noting that the trial court concluded a refusal to take a test or to release medical information are " 'akin to refusing to sign an authorization,' " the *Rossi* court disagreed. (*Id.* at pp. 989-990.) "We do not wish to imply that a literal authorization form is always required to state a section 56.20(b) claim; what is important is that there be allegations that the employer was actually seeking the plaintiff's permission to obtain her medical information *from a healthcare provider*." (*Rossi*, at p. 990, fn. 11, italics added.) The appellate court acknowledged that the plaintiff was required by her employer to submit confirmation of her vaccination status, which would have qualified as medical information under the CMIA. (*Ibid.*) However, the school asked plaintiff herself to provide the confirming medical information, and did not seek permission to obtain the information from her healthcare provider. (*Ibid.*)

Here, as in *Rossi*, while the results of a COVID-19 test would necessarily include medical information derived from a health care provider, the first amended complaint contained no allegation that A&A requested Frayo to authorize his health care provider to disclose the results of such a test to A&A. Instead, as in *Rossi*, Frayo alleged A&A asked him to personally provide proof of a negative test result from a third party provider before returning to work, which Frayo refused to provide. Based on the plain language of the statute, these facts do not establish a prima facie section 56.20(b) claim. We decline to treat an employee's refusal to take and provide the results of a COVID-19 test as akin to an "employee's refusal to sign an authorization" under the CMIA.

10

Frayo further claims that the "CMIA was triggered because he was forced to provide a COVID-19 test from a third party health care provider and was unable to use an at-home test." Frayo's interpretation of section 56.20(b) would extend the CMIA to regulate employer-mandated COVID-19 testing methods and policies. In *Loder*, our Supreme Court determined that section 56.20(b) of the CMIA "does not prohibit an employer from disqualifying an applicant or employee who refuses to authorize disclosure to the employer of the ultimate results" of an employee drug testing program, so long as the program is otherwise lawful. (*Loder*, *supra*, 14 Cal.4th at p. 862.) The court noted that the Legislature did not intend that section 56.20(b) regulate the circumstances of employer mandated medical examinations or drug tests as other federal and state regulations exist to directly address those issues. "[T]here is nothing in the language of legislative history of [the CMIA] to suggest that the Legislature, in drafting this enactment, ever considered the entirely distinct question of whether, and under what circumstances, an employer may require a . . . current employee to submit to an employer-administered medical examination or drug test as a condition of employment." (*Ibid.*, italics omitted.) Whether the court's reasoning in *Loder* applies equally to an employer's mandated COVID-19 protocol that requires proof of a negative third party administered test has not been decided by any court.

As we conclude that Frayo cannot adequately plead the first two elements of a prima facie claim under section 56.20(b), we need not resolve this issue. For the same reason, we do not determine whether the trial court erred when it determined that the "necessary action" exception outlined in section 56.20(b) shields A&A from liability as a matter of law. And because we determine that the first amended complaint did not put forth a viable cause of action under section 56.20(b), we find that Frayo suffered no infringement of his right to due process.

Because Frayo has not argued or shown a reasonable possibility that the defects in his section 56.20(b) claim could be cured by amendment, the trial court properly

11

sustained the demurrer to this cause of action without leave to amend. (*Automobile Dismantlers*, *supra*,180 Cal.App.3d at p. 742.)

### 3.    *Frayo's Section 56.20(c) Claim*

We also conclude that the first amended complaint fails to adequately plead the prima facie elements of a section 56.20(c) claim because Frayo did not allege facts from which we can infer that respondents used "medical information which . . . [they] possesse[d] pertaining to [him]." (§ 56.20(c).)

In the first amended complaint, Frayo alleged respondents violated section 56.20(c) by using the "medical information" he provided without his authorization, which consisted of his statement that he was ill and a description of his symptoms, as the basis to terminate him. Frayo does not argue this theory on appeal, and properly so. Under the CMIA, Frayo's description of his own symptoms does not constitute "medical information" which is defined as information provided from "a provider of health care, health care service plan, pharmaceutical company, or contractor." (§ 56.05, subd. (j); *Rossi*, *supra*, 94 Cal.App.5th at pp. 996-997.)

Instead, Frayo now argues respondents violated section 56.20(c) by failing to provide him with an authorization form before asking him to take the COVID-19 test and by forcing Frayo to provide his COVID-19 test result. Frayo asserts without supporting authority that "when an employer seeks medical information from its employee, the employer must provide the employee with an authorization. . . ." But the language of section 56.20(c) contains no such requirement. The statute simply states, absent certain exceptions not relevant here, "[n]o employer shall use, disclose, or knowingly permit its employees or agents to use or disclose medical information which the employer possesses pertaining to its employees without the patient having first signed an authorization . . . ." (§ 56.20(c).) We are without authority to add the requirement that an employer seeking an employee's medical information must provide an authorization to the employee as

12

Frayo desires here. "A court 'may not rewrite a statute, either by inserting or omitting language, to make it conform to a presumed intent that is not expressed.' " (*Kaanaana v. Barrett Business Services, Inc.* (2021) 11 Cal.5th 158, 171.)

Further, because section 56.20(c) describes the use of "medical information which the employer possesses pertaining to its employees," the plain language of section 56.20(c) limits its application to employers who already have possession of the employee/patient's CMIA defined medical information, prohibiting such employers from using or disclosing that information without the employee's authorization. Based on this statutory language, the court in *Rossi*, *supra*, 94 Cal.App.5th at pages 996-997, concluded that to successfully assert liability under section 56.20(c), the plaintiff must allege that the employer used medical information received from the employee's health care provider. In *Rossi*, plaintiff alleged defendants violated section 56.20(c) because the school's classification of Rossi as "unvaccinated," was used without her authorization and as a basis for her termination. (*Id.* at pp. 981-982.) The appellate court concluded that the school's classification of plaintiff as "unvaccinated" was not based on medical information received by the school, as plaintiff refused to disclose such information. (*Id.* at pp. 996-997.) "Without any factual allegations that [respondents] received any 'medical information,' such as medical records, a medical certification, or other information in 'electronic or physical form . . . derived from a provider of health care' [citation], the complaint fails to state a cause of action for unauthorized use of such information under section 56.20(c)." (*Id*. at p. 997.) We perceive no sound reason to disagree with this interpretation of the statute.

As in *Rossi*, Frayo has not alleged that respondents received any medical information "derived from a provider of health care" under the CMIA. Indeed, Frayo conceded he never took the COVID-19 test, and thus it would be impossible for respondents to be in possession of medical information related to the test. As in *Rossi*, without factual allegations establishing that respondents actually received or were in

13

possession of Frayo's medical information as defined under the CMIA, he fails to state a claim that respondents used this information without his authorization under section 56.20(c). Frayo has not argued nor shown a reasonable possibility that he could establish this element by amendment. Accordingly, the trial court properly sustained the demurrer to his second cause of action without leave to amend.

### C.     *No Error in Dismissing the First Amended Complaint as to All Parties*

Frayo contends the trial court erred when it dismissed the lawsuit in its entirety without ruling on the issue of whether Martin and Raphael-Martin could be individually liable under CMIA. Frayo requests that we rule on this issue "to streamline subsequent litigation." Respondents argue the CMIA applies only to employers. Additionally, respondents argue that if Frayo is unable to state a cause of action against A&A, then claims against the owners of A&A individually based on the same allegations cannot be sustained.

We need not decide whether the CMIA applies solely to employers. At oral argument, Frayo's counsel conceded that Frayo's causes of action against the individual defendants are predicated upon the same facts as his claims against A&A. As we have concluded that the facts alleged in the first amended complaint failed to establish a viable claim under the CMIA as a matter of law, we determine that the trial court did not err in dismissing the entire action. (See, e.g., *Pierce v. San Mateo County Sheriff's Dept.* (2014) 232 Cal.App.4th 995, 1020-1021 ["In some cases, it may be appropriate to dismiss an action even as to Doe defendants after a successful demurrer by a named defendant, for example, where the basis for the successful demurrer applies equally to the Doe defendants."].)

### III.     DISPOSITION

The judgment of dismissal is affirmed. Respondents are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1)(2).)

14

_____
Greenwood, P. J.

WE CONCUR:

_____
Bamattre-Manoukian, J.

_____
Adams, J.*

H050689
Frayo v. Martin et al.

_____
    \* Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15

Filed 6/21/24

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## SIXTH APPELLATE DISTRICT

RYAN OWEN FRAYO
Plaintiff and Appellant,
v.
ANDREW D. MARTIN, et al.,
Defendants and Respondents.

H050689
Santa Cruz County Super. Ct. No. 22CV00610

BY THE COURT:

The order filed on June 18, 2024, granting the request for publication is amended as follows.

The written opinion in the above-entitled matter filed on May 29, 2024, was not certified for publication in the Official Reports.  Upon application of respondents A&A Organic Farms Corporation, Andrew D. Martin and Aimee M. Raphael-Martin, and good cause appearing, it is ordered that the opinion shall be certified for publication pursuant to rule 8.1105(b) of the California Rules of Court.  It is therefore ordered that the opinion be published in the Official Reports.

(Greenwood, P.J., and Bamattre-Manoukian, J. participated in this decision.)

Date: _____        _____ P.J.

1

Trial Court:                                                    Santa Cruz County Superior Court
                                                               Superior Court No: 22CV00610

Trial Judge:                                                   The Honorable Timothy Volkmann


Attorneys for Plaintiff and Appellant          Emilio Rene Dorame-Martinez,
Ryan Owen Frayo:                               Martinez Law Office

                                               Howard Lawrence Williams


Attorneys for Defendant and Respondents        Mark Patrick Iezza,
A&A Organic Farms Corporation,                 Iezza & Hockel, PC
Andrew D. Martin, and
Aimee M. Raphael-Martin:                       Thomas Kevin Hockel
                                               Iezza & Hockel, PC.

                                               Eileen Mary Rice
                                               Klein, Hockel, Iezza & Patel, P.C


Frayo v. Martin et al.
H050689