Filed 7/29/24  Shin v. Office of the State Long-term Care Ombudsman CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| HAI-JIN SHIN,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>OFFICE OF THE STATE LONG-TERM CARE OMBUDSMAN et al.,<br><br>     Defendants and Respondents. | B330937<br><br>(Los Angeles County<br>Super. Ct. No. 22STCV19313) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Douglas W. Stern, Judge.  Affirmed.

Law Office of Hai-Jin H. Shin and Hai-Jin Helena Shin for Plaintiff and Appellant.

Rob Bonta, Attorney General, Jodi L. Cleesattle, Assistant Attorney General, Catherine A. Woodbridge and Kyle Da Silva, Deputy Attorneys General, for Defendants and Respondents.

———————————

In June 2020, in the midst of the COVID-19 pandemic, Sun Hyang Shin passed away while she was a resident of a skilled nursing facility.  Her daughter Hai-Jin Shin, as successor in interest to Sun Hyang's[1] estate, filed suit against defendants and respondents the Office of the State Long-Term Care Ombudsman (the ombudsman) and the ombudsman's local representative, Wise & Healthy Aging (WHA).  Hai-Jin alleged that the defendants violated Sun Hyang's constitutional right to due process, and failed to fulfill their duty under Welfare and Institutions Code[2] section 9712.5, when they refused to investigate Hai-Jin's allegations that the skilled nursing facility was mistreating Sun Hyang.  Hai-Jin also claimed that the defendants violated Sun Hyang's Fourteenth Amendment right to equal protection by failing to provide a translator to assist Sun Hyang in executing a new advance healthcare directive designating Hai-Jin as her agent for making healthcare decisions on her behalf in place of Hai-Jin's brother, Dong Won Shin.[3]  Hai-Jin sought class action relief on behalf of all patients or residents of skilled nursing facilities similarly situated to Sun Hyang.

Defendants demurred, and the trial court eventually sustained the demurrer to Hai-Jin's second amended complaint without leave to amend.  The trial court found that Hai-Jin had failed to state a cause of action on her Fourteenth Amendment claims because the Eleventh Amendment bars lawsuits against

---

[1] We refer to members of the Shin family by their given names to avoid confusion.  We intend no disrespect.

[2] Unless otherwise specified, subsequent statutory references are to the Welfare and Institutions Code.

[3] Dong Won is not party to this case.

states based on federal claims unless the state consents. The court sustained the demurrer as to the state-law claims on the grounds that section 9712.5 does not create a mandatory duty, and that there is no private right of action for violations of equal protection or due process under article I, section 7(a) of the California Constitution unless the plaintiff's claim is tied to an established common law or statutory action. Hai-Jin contends the trial court erred in reaching these conclusions, but we affirm the sustaining of the demurrer without leave to amend as explained below.[4]

### FACTUAL BACKGROUND AND PRIOR PROCEEDINGS

Because this is an appeal from a demurrer, " 'we must assume the truth of all facts properly pleaded by the plaintiff[ ], as well as those that are judicially noticeable.' [Citation.]" (*Heckart v. A-1 Self Storage, Inc.* (2018) 4 Cal.5th 749, 753.) Those facts are as follows.

Sun Hyang died at age 87 on June 12, 2020, at Country Villa Wilshire Healthcare Center (the facility), a skilled nursing facility in Los Angeles. Sun Hyang had been diagnosed with multiple myeloma, a type of blood cancer, and had been a resident at the facility since September 2018. During the same month, Sun Hyang signed an advance healthcare directive authorizing her son Dong Won "to make health care decisions for me."

---

[4] Because we conclude the trial court properly sustained the demurrer without leave to amend, we need not consider Hai-Jin's claim that the court erred by striking allegations pertaining to class actions from the complaint.

During her treatment, Sun Hyang said on multiple occasions that she wanted to go home and stay with Hai-Jin. Although Dong Won could not override Sun Hyang's wishes regarding her treatment, Hai-Jin and Sun Hyang agreed that if Sun Hyang executed a new directive appointing Hai-Jin as her agent, this would facilitate Sun Hyang's discharge from the facility. In December 2018 or January 2019, with Hai-Jin's help, Sun Hyang filled out a new advance healthcare directive form replacing Dong Won with Hai-Jin. Because an advance healthcare directive by a patient at a skilled nursing facility "is not effective unless a patient advocate or ombudsman . . . signs the advance directive as a witness" (Prob. Code, § 4675, subd. (a)), Sun Hyang did not sign the document immediately. Instead, Hai-Jin asked a nurse at the facility to make sure Sun Hyang signed the document the next time a representative of the ombudsman[5] visited.

On January 11, 2019, a representative of WHA phoned Hai-Jin and told her that Sun Hyang had not signed the document. According to the representative, Sun Hyang said she wanted Dong Won, who was a doctor, to continue making medical decisions on her behalf. Hai-Jin told Sun Hyang about the call, and Sun Hyang stated that it "was a mistake."

---

[5] The ombudsman's office, which is part of the Department of Aging (§ 9710), is charged by statute with "[i]dentify[ing], investigat[ing], and resolv[ing] complaints that are made by, or on behalf of, residents of long-term care facilities." (§ 9712.5, subd. (a)(1).) The ombudsman may act "through representatives of the office" (§ 9712.5), and has appointed WHA as a local representative.

4

Hai-Jin told WHA representatives that Sun Hyang's failure to sign the new advance healthcare directive had been a mistake. She requested that a representative return to the facility to witness Sun Hyang signing the document. In addition, Hai-Jin told WHA that the Korean language interpreter the ombudsman had used—a woman named Stella, whom Dong Won had hired as a caretaker for Sun Hyang at the facility—"was not a neutral agent" because "she would lose a source of income if [Sun Hyang] went home to" Hai-Jin. The representative refused to return to the facility to re-visit this issue, and further stated WHA did not have the financial resources to provide translators for patients who lack proficiency in English. Hai-Jin told a WHA representative "that [Sun Hyang] did not need a translator and that she understood English." However, ombudsman representatives still refused to return to the facility to witness another signing of the advance healthcare directive.

On May 31, 2019, Sun Hyang signed an advance healthcare directive appointing Hai-Jin as her health care agent, but no patient advocate or ombudsman witnessed the signing as required by Probate Code section 4675, subdivision (a). When Hai-Jin presented the facility with the document and requested that Sun Hyang be discharged, the facility refused to do so.

In August 2019, Hai-Jin sent WHA photos showing Sun Hyang in an emaciated condition, as well as videos in which Sun Hyang said she wanted to go home. WHA refused to open a case to investigate the facility for starvation and false imprisonment of Sun Hyang, however. A WHA representative told Hai-Jin that under the organization's policy, when a resident of a skilled nursing facility has an advance healthcare directive in place, only the agent holding power of attorney may initiate a complaint

5

against the nursing facility.  In the ensuing months, Hai-Jin contacted both WHA and the ombudsman several more times, but in each instance, the defendants refused to take action.

When the COVID-19 pandemic struck in March 2020 and spread rapidly in nursing homes, Hai-Jin demanded that Sun Hyang be released from the facility to protect her from the disease, but the facility again refused.  Hai-Jin learned more than two years after Sun Hyang's death that Sun Hyang had been infected with the virus that causes COVID-19.  Hai-Jin does not allege that COVID-19 caused Sun Hyang's death.

On June 13, 2022, Hai-Jin filed a complaint against the defendants alleging a single cause of action for negligence.  The defendants demurred, arguing that state agencies are immune from liability for common law torts, and that Hai-Jin had failed to identify a statutory basis for liability.  Before the trial court ruled on the demurrer, Hai-Jin filed a first amended complaint alleging causes of action for violation of Sun Hyang's state and federal constitutional rights to equal protection and due process, and for violations of the defendants' statutory duties under section 9712.5.  In the new complaint, Hai-Jin sought only declaratory and injunctive relief.  The defendants again demurred, arguing that they are immune from liability and that they owed no mandatory duty to Sun Hyang under the statute.  The trial court sustained the demurrer with leave to amend, and Hai-Jin filed the operative second amended complaint that expanded on her previous allegations but alleged the same causes of action as before.  The defendants demurred for a third time, and the trial court sustained the demurrer without leave to amend.

6

## STANDARD OF REVIEW

"'The purpose of a demurrer is to test the sufficiency of a complaint by raising questions of law.' [Citation.]" (*Candelore v. Tinder, Inc.* (2018) 19 Cal.App.5th 1138, 1143.) "We review an order sustaining a demurrer de novo, exercising our independent judgment as to whether a cause of action has been stated as a matter of law." (*Thompson v. Ioane* (2017) 11 Cal.App.5th 1180, 1190.) In doing so, "'[w]e assume the truth of the properly pleaded factual allegations, [and] facts that reasonably can be inferred from those expressly pleaded.' [Citation.] But we do not assume the truth of 'contentions, deductions, or conclusions of law.' [Citation.] We liberally construe the complaint 'with a view to substantial justice between the parties,' drawing 'all reasonable inferences in favor of the asserted claims.' [Citations.]" (*Liapes v. Facebook, Inc.* (2023) 95 Cal.App.5th 910, 919.) "To survive a demurrer, the complaint need only allege facts sufficient to state a cause of action . . . ." (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 872.) "[B]ecause we are reviewing the trial court's ruling and not its reasoning, we may affirm on any ground supported by the record regardless of whether the trial court relied upon it." (*Doe v. Roman Catholic Archbishop of Los Angeles* (2016) 247 Cal.App.4th 953, 960.)

"When a demurrer is sustained without leave to amend, 'we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.' [Citation.] Plaintiff has the burden to show a reasonable possibility the complaint can be amended to state a cause of action." (*Hamilton v. Greenwich*

7

*Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1609.)
"Where, however, amendment could not correct a deficiency in
the complaint or where the action is barred as a matter of law,
the demurrer is properly sustained without leave to amend."
(*State of California Auto. Dismantlers Assn. v. Interinsurance
Exchange* (1986) 180 Cal.App.3d 735, 742.) "The issue of leave to
amend is always open on appeal, even if not raised by the
plaintiff." (*City of Stockton v. Superior Court* (2007) 42 Cal.4th
730, 746.)

## DISCUSSION

### A.    Hai-Jin Lacks Standing to Bring an Equal Protection Claim

In her first cause of action, Hai-Jin alleged that the
defendants violated Sun Hyang's Fourteenth Amendment right to
equal protection by refusing to provide a translator to help
witness the signing of a new advance healthcare directive.[6] The
trial court sustained the defendants' demurrer to this cause of
action on the ground that the Eleventh Amendment bars federal
lawsuits against a state unless the state consents to the suit.
Hai-Jin argues this was error because "[t]here is no . . . Eleventh
Amendment immunity from the guarantees of the [e]qual

---

[6] Hai-Jin argued that the defendants' actions also violated
her rights under article I, section 7 of the California Constitution.
The trial court sustained the demurrer to these claims on the
ground that there is no cause of action for a violation of this
provision "when such an action is not tied to an established
common law or statutory action." (*Julian v. Mission Community
Hospital* (2017) 11 Cal.App.5th 360, 391.) Hai-Jin does not
challenge this conclusion on appeal, and we therefore do not
address it.

8

[p]rotection and [d]ue [p]rocess [c]lauses of the Fourteenth Amendment."

We requested supplemental briefing from the parties regarding whether we may sustain the demurrer as to this cause of action on a different ground, namely that Hai-Jin lacks standing to bring an equal protection claim. We conclude that Hai-Jin indeed lacks standing because she has not alleged that Sun Hyang needed a translator to help her in signing an advance healthcare directive. Instead, she has alleged the opposite—that Sun Hyang did *not* need a translator. As a result, Hai-Jin has not stated a cause of action because, even if the defendants had a policy not to provide translators that denied equal protection to patients who lack English proficiency, that policy did not injure her.

"Standing is related to the requirement contained in Code of Civil Procedure section 367 that '[e]very action must be prosecuted in the name of the real party in interest, except as otherwise provided by statute.' (Code Civ. Proc., § 367.) The real party in interest is generally the person who has the right to sue under the substantive law." (*River's Side at Washington Square Homeowners Assn. v. Superior Court* (2023) 88 Cal.App.5th 1209, 1225.) "Where someone other than the real party in interest files suit, the complaint is subject to a general demurrer. (Code Civ. Proc., § 430.10 . . . .)" (*Estate of Bowles* (2008) 169 Cal.App.4th 684, 690.)

As a general rule, a party has standing to sue and is the real party in interest if he or she has " 'suffered or is about to suffer an injury of sufficient magnitude reasonably to assure that all of the relevant facts and issues will be adequately presented to the adjudicator.' " (*CashCall, Inc. v. Superior Court* (2008) 159

9

Cal.App.4th 273, 286, quoting *Holmes v. California Nat. Guard* (2001) 90 Cal.App.4th 297, 315.)

The requirement of a particularized injury as a basis for standing "applies with as much force in the equal protection context as in any other." (*United States v. Hays* (1995) 515 U.S. 737, 743 [115 S.Ct. 2431, 132 L.Ed.2d 635].) Under this rule, "even if a governmental actor is discriminating on the basis of [a prohibited category], the resulting injury 'accords a basis for standing only to "those persons who are personally denied equal treatment" by the challenged discriminatory conduct.' [Citations.]" (*Id.* at pp. 743-744.) Thus, voters who sought to challenge a state's Congressional district map that allegedly discriminated on the basis of race lacked standing to sue because they did not reside in the districts that were allegedly the target of racial gerrymandering. (*Id.* at p. 745.) By the same logic, a plaintiff who was not a licensed contractor lacked standing to challenge a transit agency's affirmative action program for awarding contracts on equal protection grounds. (*Cornelius v. Los Angeles County etc. Authority* (1996) 49 Cal.App.4th 1761, 1771-1773.) Because he was not legally qualified to bid on projects for the transit agency, the plaintiff could not claim to have been injured by the manner with which the agency selected the winning bids. (*Ibid.*)

In this case, Hai-Jin stated in her complaint that she told a representative of WHA that Sun Hyang "did not need a translator and that she understood English." Because the complaint does not allege that Sun Hyang needed a translator, and cannot given Hai-Jin's admission, Hai-Jin has failed to meet this requirement. As a result, Hai-Jin lacks standing to assert her first cause of action.

In her supplemental brief, Hai-Jin alleges that her admission that Sun Hyang sufficiently understood English is not dispositive because it represented only her own opinion. According to Hai-Jin, the WHA representative believed otherwise and refused to provide an independent translator. We do not see how this alters the analysis. After Sun Hyang, in the presence of her private caregiver and translator Stella, declined to sign the advance healthcare directive the first time, Hai-Jin insisted that WHA bring its own translator and return to the facility to witness the signing again, even though in Hai-Jin's view, Sun Hyang did not need a translator to assist at all. This was a dispute over the use of the ombudsman's resources, not a matter of equal protection. As we explain below, the ombudsman and her representatives have discretion over how they exercise those resources, and Hai-Jin does not allege that they did so in bad faith.

## B. The Due Process and State Law Claims Fail because Section 9712.5 Does Not Create a Mandatory Duty to Investigate Complaints

Hai-Jin's second and third causes of action assert different theories of liability, but both are based on the same alleged misconduct. In her third cause of action, Hai-Jin alleged that under section 9712.5, the defendants were required to investigate her claims that the facility was starving and falsely imprisoning Sun Hyang. In Hai-Jin's view, the defendants' alleged policy of declining to investigate complaints brought by parties who do not hold a power of attorney over a patient is a violation of their duty under the statute. In her second cause of action, Hai-Jin alleged that the defendants' failure to investigate pursuant to their policy denied Sun Hyang's Fourteenth Amendment right to due process.

11

The trial court sustained the demurrer as to the third cause of action on the ground that section 9712.5 does not impose a mandatory duty on the defendants. Hai-Jin contends this was error, but we disagree. Furthermore, because the statute did not impose a mandatory duty on defendants to investigate Hai-Jin's claim once made without permitting consideration of any other factors, we conclude that their failure to do so could not be a violation of due process.

Hai-Jin's argument for a mandatory duty under the statute is based primarily on the text of section 9712.5, which states that the ombudsman "*shall* . . . [¶] . . . [i]dentify, investigate, and resolve complaints that are made by, or on behalf of, residents of long-term care facilities." (*Id.*, subd. (a)(1), italics added.) But although the term "shall" ordinarily signifies a mandatory duty, " 'there are unquestionably instances in which other factors will indicate that apparent obligatory language was not intended to foreclose a governmental entity's or officer's exercise of discretion. [Citations.]' [Citation.]" (*Bradley v. Lacy* (1997) 53 Cal.App.4th 883, 889.)

Section 9712.5 states that "[i]f the office does not investigate a complaint, the complainant shall be notified in writing of the decision not to investigate and the reasons for the decision." (*Id.*, subd. (a)(3).) This subdivision would be unnecessary unless the ombudsman had discretion to choose not to investigate every complaint. In the same way, district attorneys retain the discretion not to initiate charges against criminal suspects even though the Government Code states that they " 'shall' " do so. (*Taliaferro v. Locke* (1960) 182 Cal.App.2d 752, 757, citing Gov. Code, § 26501.) Hai-Jin asserts no cause of action for either the ombudsman or WHA failing to send her a

12

letter explaining the decision not to investigate her complaint, and there is no cause of action on behalf of Sun Hyang against the ombudsman for making that decision in the first place.

Hai-Jin's claim also fails for another reason. Under section 9715, subdivision (a), "No representative of the office shall be held liable for good faith performance of responsibilities under this chapter." Hai-Jin has never alleged or claimed that she could allege that the ombudsman's representatives acted in bad faith.

## DISPOSITION

The judgment is affirmed. Defendants are awarded their costs on appeal.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

ROTHSCHILD, P. J.

KELLEY, J.*

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.